MATUSCHKA, Respondent, vs. MURPHY and another, Appellants.

*December 16, 1920—March 8, 1921.*

*Physicians and surgeons: Lack of care and skill of dentist in treating tooth: Proximate cause: Burden of proof: Uncertainty: Special verdict: Omnibus question as to negligence: Subdivision of questions to cover litigated issues.*

1. The function of a special verdict is to secure a finding on each litigated question. In negligence cases each ground of negligence constitutes a distinct question, and proper practice requires the special verdict to be so framed as to indicate in what respect the jury agree in finding negligence.

2. Although the evidence is sufficient to sustain a finding that the employee of the defendant dentist failed to exercise proper care and skill, it is *held* that the evidence—showing that plaintiff had a chronic infection of the lower jaw when he appeared for treatment, the future progress of which it was impossible to foretell, and that the subsequent spreading of the infection could have followed the treatment actually administered or might have followed treatment in accordance with exact scientific methods—is insufficient to support a finding that the lack of care and skill of the dentist was the proximate cause of plaintiff's injuries.

3. Where the proof discloses that a given result may have been caused by two or more causes, one of which was the negligence of the defendant, and a jury can only conjecture as to which is the efficient cause, the plaintiff has not met the burden of proving proximate cause.

APPEAL from a judgment of the circuit court for Milwaukee county: GUSTAVE G. GEHRZ, Circuit Judge. *Reversed.*

The defendant *W. B. Murphy* was a dentist in the practice of his profession at Milwaukee and had been such for a number of years prior to December 1, 1918. The defendant *Stromberg* had been in his employ for about a year and a half prior to that date, at which time he was in charge of his office, the defendant *Murphy* being on his vacation. On Saturday, November 30th, the plaintiff, who was then suffering with a previously developed toothache, called at the office for dental advice and services. The plaintiff

testified that there was a swelling of the gum in the region of the first molar of the left jaw. *Stromberg* extracted the tooth. Before extracting the tooth he injected a two per cent. novocain solution for the purpose of deadening the peripheral nerves. Plaintiff testified that the needle was first injected into his lip and, without resterilization, was injected into the swollen gum. ' *Stromberg* denied that the needle was injected into plaintiff's lip and denied that the gum was swollen. He divided the tooth and took it out in two parts. A pus sac was attached to the first root, but none to the second. He did not curette the socket, but washed it out with boric acid and swabbed it liberally with iodine.

Plaintiff returned Monday morning and there was more swelling. The infection had traveled forward. *Stromberg* washed out the socket thoroughly and painted it with iodine, gave instructions to keep it clean, and directed plaintiff to return in the afternoon. In the afternoon the same procedure was followed. Tuesday morning plaintiff again called at the office, the swelling was still present down deep, but not alarming. He again washed it out with boric acid and painted it with iodine, and did the same thing on Tuesday afternoon. Plaintiff returned Wednesday, when it looked as though the swelling would open on the face, and *Stromberg* then referred him to Dr. Wenker. Dr. Wenker discovered a serious infection, with a high temperature and pulse. He curetted the socket from which the tooth had been extracted, made liberal incisions through the cheek and gum, put in packing, and, eventually, removed seven of the lower front teeth and portions of the jaw bone.

This action was brought by the plaintiff against the defendants to recover damages, on the theory that the serious consequences resulting from the infection were due to the improper practice of the defendant *Stromberg* in the extraction of the tooth and subsequent treatment. The case was tried before a jury and the following special verdict

returned: (1) that *Dr. Stromberg* in his treatment and care of the plaintiff failed to use such reasonable care and skill as was ordinarily possessed and exercised by dentists in good standing, of the same system or school of practice, in the city of Milwaukee in November and forepart of December, 1918; (2) that such want of care and skill was the proximate cause of plaintiff's injuries; and (3) damages $10,000. Upon motion made after verdict the court gave plaintiff the option of taking judgment for $4,745 or a new trial. Plaintiff elected to take judgment for the reduced amount, and from the judgment so entered the defendants bring this appeal.

For the appellants there was a brief by *Lines, Spooner & Quarles,* and oral argument by *Leo Mann,* all of Milwaukee.

For the respondent there was a brief by *Martin J. Brennan,* attorney, and *Timlin & Dean,* of counsel, all of Milwaukee; and the cause was argued orally by *Mr. Brennan* and *Mr. William H. Timlin.*

The following opinion was filed January 11, 1921:

Owen, J. The jury found, in response to question 1 of the special verdict, that *Dr. Stromberg,* in his treatment and care of the plaintiff, failed to use such reasonable care and skill as was ordinarily possessed and exercised by dentists in good standing, of the same system or school of practice, in the city of Milwaukee in November and forepart of December, 1918. Fault is found with this question because it did not disclose the respect in which the jury found that *Dr. Stromberg* failed in the use of reasonable care and skill. Upon the trial it was contended that he was negligent in four respects: (1) failure to resterilize the needle after injecting it into plaintiff's lip; (2) that the anæsthetic was injected into an infected area; (3) that he did not curette the tooth socket after extracting the tooth; and (4) in failing to send the plaintiff to a surgeon until the fourth day after the extraction. It is apparent that

the form of the question is such that the jury might have agreed that *Stromberg* failed to use the requisite degree of care and skill and yet they might not have agreed on the particular in which he failed. Under the circumstances proper practice required that the question be so framed as to indicate in what respect the jury agreed that there was a failure on the part of the defendant *Stromberg* to use reasonable care and skill. As the question and answer stand, it cannot be said that the jury agreed that he was negligent in any one of the four particulars urged.

It is the function of a special verdict to secure a finding by the jury on each question litigated. In negligence cases each ground of negligence constitutes a distinct litigated question, and proper practice requires that the jury be given an opportunity to find specially with reference to each particular ground of alleged negligence. This cannot be accomplished by the submission of an omnibus question in which the jury is required to find generally upon the question of negligence. Such verdicts have been sustained in cases where negative answers have been returned to the general question of negligence and the jury were instructed that if they found certain facts to exist they should answer the question in the affirmative, as in *Kadolph v. Herman,* 166 Wis. 577, 166 N. W. 433. In such cases the finding of an absence of negligence presents a different question from that resulting in case of an affirmative finding. The negative answer indicates that in the minds of the jury none of the alleged grounds of negligence was proven. In the case of an affirmative answer some of the jury might have concluded there was negligence upon one ground and some upon another, resulting in a situation where all of the jurors agreed that there was negligence but did not agree upon the grounds thereof. He who is charged with negligence in several particulars is entitled to have a finding of the jury upon the existence of every set of facts upon which negligence is predicated.

While we merely pause here to comment upon the form of this question, and to suggest that it would have been preferable practice to have subdivided the question or to have so framed it as to require the jury to indicate the particular respect in which the defendant failed to exercise proper care and skill, we find it unnecessary to determine whether the form of the question constituted reversible error, as our disposition of the case will rest upon more substantial considerations.

While there is sufficient evidence in the record to sustain a finding that the defendant *Stromberg* did fail to exercise such reasonable care and skill as was ordinarily possessed and exercised by dentists in good standing, of the same system or school of practice, at the time in question, we find a total absence of proof to support the further fact, essential to a recovery, namely, that such want of care and skill was the proximate cause of plaintiff's injuries. That plaintiff's painful experience and its lamentable results were due to an infection of the lower jaw, is conceded. The question is, What caused the infection? In order to recover against the defendants, plaintiff must produce evidence from which the jury is justified in finding that it was due to the want of care and skill of the defendant *Stromberg*. This burden is not met by showing that it might have been the result of two or more causes, one of which was plaintiff's unskilful treatment. Verdicts must rest upon greater certainty. Where the proof discloses that a given result may have occurred by reason of more than one proximate cause, and that a jury can do no more than guess or conjecture as to which was in fact the efficient cause, the submission of such a choice to the jury has been consistently condemned by this court. *Musbach v. Wis. C. Co.* 108 Wis. 57, 84 N. W. 36; *Quass v. Milwaukee G. L. Co.* 168 Wis. 575, 170 N. W. 942; *Klein v. Beeten,* 169 Wis. 385, 172 N. W. 736.

That at the time plaintiff went to the defendants for treatment of his tooth there was an infection at the root

thereof is conceded by all the experts who testified in the case. That the subsequent serious consequences to plaintiff's jaw might and probably were due to such pre-existing infection most satisfactorily appears from their evidence. A number of practicing dentists in the city of Milwaukee testified on plaintiff's behalf, but their testimony was confined to the question of whether the treatment of *Dr. Stromberg* was in accordance with approved and usual practice. They did not assume to testify upon the question of whether the serious results were due to *Stromberg's* lack of care and treatment and, indeed, they probably were not qualified to express an opinion upon that question, as the origin and progress of an infection is a bacteriological question, and they professed no special training upon that subject.

Dr. Wenker, the physician to whom plaintiff was sent by the defendant *Stromberg*, testified that the condition in which he found the patient might have been due to one of two causes: the virulency of the infection existing in the jaw or the added infection made by the injection. He further testified:

"The fact that this plaintiff felt pain on Friday, before the tooth was extracted, indicated a lighting up of this chronic infection which had been present previously. That infection might have been in his system for quite a few years, so that it was becoming acute and developed into this condition on Friday, and when the infection gets into that shape no one can tell just what form it is going to take from then on. In many cases it spreads in spite of all that is done to prevent it."

Elbert J. Weaver, a dentist specializing in pyorrhea and dental surgery, vouchsafed the opinion that the subsequent injurious results to plaintiff were due to the injection. It appears, however, that his opinion is founded upon two personal experiences, and that his knowledge upon the subject of bacteriology in general or of infections in particular is not such as to carry great convincing power. Even this

witness concedes that it is possible, but improbable, that the infection might have come from other causes and not from the injection. He also concedes that "it is accepted that there are cases where in spite of all we do, and in spite of all the precautions we have taken, infection comes; you don't know where, but it comes."

The foregoing is the extent of plaintiff's proof in support of a finding that the want of care and skill exercised by the defendant *Stromberg* was the proximate cause of plaintiff's injuries. Even though there was no further proof in the case, it is apparent that the jury could do no more than guess or conjecture as to whether plaintiff's injuries resulted from the original infection or from the defendant *Stromberg's* lack of skilful treatment. But a consideration of defendants' evidence places the matter beyond the pale of doubt.

Dr. G. V. I. Brown, an oral surgeon of the widest experience, who has taught oral surgery and kindred subjects for many years at Marquette University, at the University of Iowa, and at the Southern Dental College in Atlanta, who had charge of the section of plastic and oral surgery in the surgeon general's office during the war, who was sent by the surgeon general to Fort Oglethorpe, where he established a school and taught plastic and oral surgery to equip surgeons for the hospitals in the field, and who thereafter did all the operating and had entire charge of all the jaw cases at Cape Maine, New Jersey, where all of the head-injury cases resulting from the war were brought, and who has written text-books and is a universally recognized authority on the subject of oral surgery, testified that there could be very many causes for plaintiff's injuries; that the original infection would tend to progress in any event unless relieved; the progress of the extension would largely depend upon the condition of health of the individual, and that without a bacteriological examination it would be impossible to determine the cause of the spreading of that

infection; that if there had been no extraction of the tooth at all, the infection would have gone right on and made more trouble all the time, probably. "Keeping in mind the fact that a pus sac was found on one of the roots, that could have developed an infection and spread without any extraction of the tooth, or without any injection of anæsthetic. I have had hundreds of such cases."

Daniel Hopkinson, a physician and surgeon, holding the chair of bacteriology and pathology at Marquette University Dental Department, and who specializes in those subjects, testified minutely with reference to the origin and development of infections of various kinds. It is not important that we should refer to his more highly scientific testimony, but the following are some of his pertinent statements with reference to the case in hand. Among other things he said:

"In any given case where there is a mixed infection, I cannot tell whether it will progress or remain dormant, or anything of that kind, because there are two factors that enter into the progress or modification of the progress of any infection. The first factor is the disease-producing power of the germ, and the second is the resistance of the individual. . . . The fact that there existed at the time of the removal of the tooth an acute lighting up of an old infection; further, the removal of the tooth in and of itself mechanically may have still further lighted up the infection and caused it to spread. The lighting up of the infection may have in and of itself continued to spread. There undoubtedly was a lighting up of the infection here, without question, for the reason that there was a pus sac, indicating that there had been a dormant infection at some time and that there progressively ensued an involvement of further tissue indicating an acute type of infection that then existed. The fact that there was pain on Friday established the fact that there was a lighting up. The infection which was lighted up before the removal of the tooth, as evidenced by the pain, in and of itself could have progressed with the result which has been stated, without any manipulation, without the extraction of the tooth, and without there having been any injection into the gums. That result could have followed had the tooth been removed under a general

or gas anæsthetic, and also if the tooth had not been removed at all. At any time the lighting up of a dormant infection, and particularly a typical abscess, may result in a lighting up which progresses to the extent of destruction that here presented itself, without any manipulation whatever. It is a fact that with an infectious process it is absolutely impossible for a surgeon or any one to foretell exactly how the infection will progress. The influence of the injection into the gums, as outlined, for the purpose of producing anæsthesia, in my opinion did not have any influence upon the progress of the disease. . . . The number of bacteria that might be introduced by such a method of procedure as you have outlined, that is, the penetrating of the lip with the needle, compared with those that were already present, is so small that it would be purely speculative to say that they had any influence whatever in the progress."

It is unnecessary to detail further the scientific and expert evidence appearing in the record. It discloses this situation: Plaintiff had a chronic infection of the lower jaw, of long standing, when he went to the defendants' office for treatment. It was impossible to foretell the future progress of that infection. The subsequent results could have followed from it without the pulling of the tooth at all or by the pulling of the tooth and the subsequent treatment of the jaw according to the most exact scientific methods. They might also have followed from defendant *Stromberg's* negligent and improper practice and treatment. Which was the cause of the ultimate results cannot be told with any degree of certainty. While the experts differed as to the probability of the efficient cause, they conceded the possibility of any one of several causes. Where we have a result which may be attributable to one of two causes, it is not surprising that experts will differ as to the real cause. It emphasizes the fact, however, that any conclusion with reference thereto is mere conjecture and falls far short of that certainty which the law requires for the support of verdicts. Our conclusion is that the verdict of the jury, in so far as it finds that the want of care and skill on the part

of *Stromberg* was the proximate cause of plaintiff's injuries, is unsupported by the evidence and cannot be sustained.

*By the Court.*—Judgment reversed, and cause remanded with instructions to enter judgment dismissing plaintiff's complaint.

A motion for a rehearing was denied, with $25 costs, on March 8, 1921.