GERBER, by guardian *ad litem,* Appellant, vs. WLOSZCZYN-SKI, Respondent.

*November 17—December 8, 1925.*

*New trial: Excessive damages: Expert testimony: As to cause of plaintiff's ailment: Verdict resting in conjecture: Discretion of court.*

1. An order granting a new trial on the ground of excessive damages and because the trial court held that the conclusion of the jury as to the causal relation between the injuries received by the infant plaintiff in an automobile accident and

the condition of his heart at the time of the trial was based upon mere speculation and conjecture, is *held* not only warranted but conclusive under the state of the evidence, which consisted of testimony of plaintiff's physician that the mitral regurgitation of an enlarged heart of the plaintiff, first observed more than two years after the accident, was the result of an infection caused by the injury then received, and the unrebutted testimony of the defendant's physician that the condition of the heart was due to congenital malformation.   p. 350.

2. The granting of a new trial on the ground that justice has not been done is discretionary with the trial court.   p. 350.

APPEAL from an order of the circuit court for Milwaukee county: OTTO H. BREIDENBACH, Circuit Judge.  *Affirmed.*

The appeal is by the plaintiff from an order granting the defendant a new trial.

For the appellant there was a brief by *Goodman & Goodman* of Milwaukee, and oral argument by *Richard Goodman.*

For the respondent there was a brief by *Schoetz, Williams & Gandrey* of Milwaukee, and oral argument by *Alfred L. Gandrey.*

DOERFLER, J.   The action is one to recover damages for personal injuries resulting from a collision between the plaintiff and defendant's automobile on September 10, 1921. The plaintiff at the time of the collision was six years of age.   The case was tried before a jury, and in the special verdict submitted the jury found the defendant negligent in failing to keep a proper lookout and that such failure was a proximate cause of the injury, and in operating his machine prior to the collision at an excessive rate of speed, and that such negligence also was a proximate cause of the injury.   The jury also acquitted plaintiff of contributory negligence, and awarded him damages in the sum of $8,000. After verdict defendant's counsel moved for a new trial and the court granted such motion, and in its order, among

other things, assigned as the reasons for such new trial the following:

"And the court being of the opinion that justice has not been done in the trial and that the damages found by the jury are excessive, because upon the evidence produced at the trial there was proof uncontradicted of an adequate producing cause of the plaintiff's heart condition other than the injuries received at the time of the collision with the defendant's automobile, so that the finding of the jury as to the amount of damages, which was obviously based upon the causal relation between the injuries received by the plaintiff in the collision with the defendant's automobile and the condition of the plaintiff's heart at the time of the trial, is founded upon conjecture and not supported by adequate proof to show such causal relation to a reasonable certainty."

The order granting a new trial was conditioned and depended upon terms imposed upon the defendant. From the granting of this order plaintiff has appealed.

It appears from the evidence that the plaintiff at the time of the accident sustained a fracture of the left clavicle; that on the right side of his face the skin was denuded over an area of about four and one-half by three inches; that he sustained two abrasions of the skin about three quarters of an inch long on his head, and an abrasion about four inches above the upper margin of the left ear; that his body, arms, and legs were more or less bruised by contusions; that he remained in the hospital for a period of about one month; that he had a pulse of about 118 and a temperature of about 100.2; that before the accident the plaintiff was apparently healthy and acted like ordinary boys of his age; that upon returning to his home from the hospital he attended school intermittently; that three months after the accident he was sick in bed for about three months; that ever since the injuries his sleep has been affected, and he is inactive most of the time and evidences a lack of interest in those things which children of his age are interested in.

On the 25th day of April, 1924, Dr. Barth, a director of school hygiene in the city of Milwaukee, examined the plaintiff in the course of his official duties, and there discovered for the first time that the plaintiff had a pronounced valvular heart lesion. Dr. Irving Fowle was called as an expert by the plaintiff, and among other things testified that the temperature and accelerated pulse as above stated indicated the absorption of toxic products resulting from infection. The court then propounded the following question to the witness:

"Have you an opinion as to whether or not the injury he sustained was an adequate and producing cause of the condition you describe?" To which the witness answered: "Yes, sir. My opinion is the infection gained entrance to the general blood system through the abrasions of the surface tissue of the head at the time of the injury, and it now follows that the infection that got to the heart would come later, and produce pericarditis, and the infection of the mitral valve, which causes leakage and produces the mitral regurgitation and hypertrophy."

The witness further testified that in his opinion, to a reasonable certainty, the enlargement of the heart which was produced by the leak, and the leak itself, are permanent, and that the plaintiff will never be able to do any hard work, and that it will be hazardous for him to even run across the street, as it might cause his death.

Dr. Stern, another expert called by the plaintiff, gave his opinion that the infection was at the bottom of the temperature, which undoubtedly entered the system of the plaintiff at the time of the accident. The question was then asked of the witness whether he had an opinion, to a reasonable certainty, as to whether or not this mitral regurgitation resulted from this infection, to which he answered: "I believe it quite possible. I believe his heart has practically reached the end of its reserve, and I do not think he has a very long life expectancy with the heart condition he has."

Dr. Murdock MacRae was called as an expert by the defendant and, among other things, testified that he examined the plaintiff on May 16, 1925, and took an X-ray, and made a fluoroscopic examination of his heart; that he found that the plaintiff has an enormously enlarged heart with a mitral regurgitation; that the measurement of the heart under the fluoroscope from the right border to the mid-sternal line is seven centimeters, or approximately three inches; that the measurement from the mid-sternal line to apex is ten and one-half centimeters, or approximately four inches; that the vertical measurement from the base of the heart to the apex was twelve centimeters. That the physical examination disclosed that the plaintiff has a malformation of the chest, a bulging of the chest on the left side from the cardiac region; that in his opinion the boy, at the time of the examination, was suffering as the result of mitral regurgitation; that the condition is brought about in one of two ways: it may either be a congenital malformation, which does not evidence itself until between the years of two and puberty, or it may be the result of some infectious disease, such as rheumatism infection, scarlet fever, measles, erysipelas, tuberculosis, chicken-pox,—in fact, any infectious disease; that in the opinion of the witness the condition which existed in the plaintiff at the time of the examination has extended over a long period of time, and that the heart measurements indicated that the boy had a heart sufficient in size to accommodate a man weighing considerably over two hundred pounds, and that this showed a responsive nature to a prolonged or chronic condition and has fortified the heart muscles to the extent that the plaintiff's heart at the time of the examination was fully compensating; that the boy has a transverse heart; that it lies more or less transversely against the diaphragm. The witness also testified that infectious germs could enter the blood stream or through any avenue, but that in that event the patient would not be alive at the time when he made his examina-

tion; that bacteriæmia in an individual is almost certain death. In answer to the following question propounded by the court, "What is your opinion whether or not the injury sustained by the plaintiff at the time of the collision is an adequate producing cause of the heart condition?" the witness answered: "In my opinion the injury which he sustained could not have anything to do with his present heart condition. . . . An injury sufficiently severe to produce such a lesion in the heart would produce instant death."

The testimony of Dr. MacRae injected into the case a producing cause of the heart condition, namely, congenital malformation, which neither Dr. Fowle nor Dr. Stern took into consideration in giving their expert evidence and opinion; nor was there any rebuttal testimony on the part of any other physician which in any way controverted Dr. MacRae's testimony. It will thus appear from the testimony of Dr. MacRae, and which is uncontradicted, first, that the enlargement of the heart to a degree as shown by the evidence may be due to the shock and disturbance produced at the time of the accident, but that if it resulted from such facts it would have caused immediate death; second, that if it was caused by infection, either from a disease or the injury, it would have produced bacteriæmia, which results in almost certain death, which would be produced long before the time that he made his examination. Eliminating these two causes, the only producing cause which in his opinion could reasonably account for the heart condition is the congenital malformation.

It may be conclusively inferred from the damages awarded that the jury considered that there was a causal connection between the injuries sustained and the condition of the heart as it existed at or about the time of the trial. The court held that under the evidence such conclusion of the jury was founded upon mere speculation and conjecture, and therefore did not permit the verdict to stand. It is significant that the condition of enlargement as shown by

the undisputed evidence was not detected until over two and one-half years after the accident. This, to say the least, raises a considerable doubt as to whether from the standpoint of reasonable certainty the enlargement resulted from the accident.

The testimony of Dr. Fowle is extremely indefinite and uncertain as to whether the heart condition was the result of infection, but, construing it from a standpoint most favorable to the plaintiff, it may be said that it can be reasonably inferred that what the doctor meant was that when the infection entered the blood stream it finally reached the heart, and thereafter caused the heart condition. The testimony of Dr. Stern has but little probative value, if any. In his opinion, he believed it quite possible that the mitral regurgitation and enlarged heart resulted from infection. This is not opinion evidence based upon a reasonable certainty.

So that as the result of our review of the entire evidence we have arrived at the conclusion, first, that the testimony of Dr. Fowle constituted opinion evidence based upon a reasonable certainty that the heart condition resulted from infection which entered the system at the time of the accident, although the form of his evidence leaves his view rather uncertain and doubtful. On the other hand, we have the positive testimony of Dr. MacRae that in his opinion the heart condition resulted from congenital malformation. Under this state of the evidence the finding of the court as expressed in his opinion, as to excessive damages and causal connection, is not only warranted but quite conclusive; and under the decision in the case of *Matuschka v. Murphy*, 173 Wis. 484, 180 N. W. 821, the damages found by the jury cannot be sustained.

The court also based his order for a new trial upon the ground that justice has not been done. The granting of a new trial upon this ground is discretionary with the court.

In *John v. Pierce,* 176 Wis. 220, at p. 224 (186 N. W. 600) it was held:

"A discretion is vested in the trial court to grant a new trial when he feels that the verdict is against the weight of the evidence, and this court will not disturb his action in that respect where the evidence is such that conflicting conclusions may be reached by different persons."

Under the evidence the order of the court cannot be reversed under that decision.

The matter of granting a new trial upon the ground that justice has not been done has recently been passed upon in the case of *McCoy v. Terhorst, post,* p. 512, 205 N. W. 420, and from the evidence in the instant case it appears that the facts are much stronger to support the position of the trial court than appeared in the case above cited.

In conclusion, we will say that if evidence like that of Dr. MacRae is again introduced it will be incumbent upon the plaintiff to meet the same in such a manner as will reasonably act as an effective rebuttal.

*By the Court.*—The order of the circuit court is affirmed.