LANDOSKI, by guardian *ad litem,* Respondent, vs. MUELLER, Appellant.

*May 4—October 11, 1927.*

*Physicians and surgeons: Malpractice: Covering open fistulas with plaster cast: Evidence: Sufficiency.*

1. In a malpractice case, lack of sufficient evidence to establish that defendant had improperly covered open fistulas on plaintiff's thigh with a plaster cast is *held* to render a hypothetical question to plaintiff's expert witness, based on the assumption that he had in fact so treated the patient, error.  p. 576.
2. There is here not sufficient evidence of negligence by the surgeon to support a verdict for plaintiff.  p. 578.

APPEAL from a judgment of the circuit court for Marathon county: A. H. REID, Circuit Judge. *Reversed.*

Action for malpractice.

About April 23, 1923, the infant plaintiff, then a healthy boy of about twelve, jumped from a lumber pile. He limped a little afterwards, and that evening a physician bandaged the right ankle, then swollen, and where the boy said the

pain was.   On Monday and Tuesday of the next week he
went to school, coming home Tuesday noon complaining of
pain in the right hip.   The same physician was called but no
treatment administered.   Later on Dr. Boslough was called,
who made an examination but gave no treatment until the
Thursday following at the Wausau hospital when he found
an acute abscess in and around the hip joint.   He made an
opening for drainage in the hip region, renewing such some
three or more times during the following five months while
the boy remained in the hospital.

   In September he left the hospital for his home and re-
mained there in bed until January or February, 1924, receiv-
ing occasional visits from Dr. Boslough.   In February he
began to walk again with aid from others or by the use of
crutches.   He returned to school in April or May, and in
June was able to move about without crutches, but with a
limp and an apparent shortage of about two and one-half
inches of the right leg.   His condition improved during the
summer and he was able to play about in August.   An X-ray
was taken in September showing that the right femur was
displaced upward with a partial destruction not to exceed
one half of its head and showing some disease or softening
of the bony cavity in which the femur articulates.   During
all this time the fistulas would at times open up and then
heal over.

   On October 29th, at St. Mary's hospital in Milwaukee,
the boy was examined by the defendant.   He is a surgeon
specializing in orthopedic surgery for many years, living in
Chicago, practicing regularly there and at other places, in-
cluding weekly visits to Milwaukee.   Defendant made a
measurement of the lower limbs; a physical examination;
and was informed of the history of the case, but then gave
no treatment.   He informed plaintiff's father of the ex-
istence of infection in the hip, that the process of healing
would be slow, and that it was advisable to put the right leg
in a plaster cast to give it rest as an aid in curing.   There

was at that time at least one abscess in the neighborhood of the hip with a slight amount of pus exuding. November 5th the boy was brought back and taken to the operating room by defendant. There eight or so layers of cotton were placed over the entire limb, a bandage over those, and then a plaster cast extending from just above the ankle up to and near the navel, with openings or joints in the same at the groin. A contracted muscle was cut to prevent a pull on the leg. Two places were freed on the cast to permit of free opening to and the dressing of the two active fistulas. At that time there were scars at other portions of the limb, in-dicating former fistulas, and two such dormant fistulas were covered by the cast. The leg was placed for a time in extension. No X-ray was taken by defendant of the limb. The boy was taken to a relative in the city for a few days, and when he returned to the hospital there was some swelling in the limb beneath the cast and some pus coming out. Several further examinations were made by defendant and openings in the cast made or those then existing enlarged, but no change was made in the cast.

About December 11th defendant advised that the boy could be returned to his home, but little pus then exuding, the plaster cast to remain as it was until March, and that he should be under the care of Dr. Boslough, the defendant writing Dr. Boslough substantially as follows:

"I straightened out his right leg, and since his condition is due to an old osteoarthritis of the femur which apparently started in the clinical picture of a juvenile osteochronditis, the correction stirred up again the old process. I expected such a stirring up and also the formation of an abscess. The abscess formed in the groin, and you will find there a tiny opening from which a thick yellow pus is discharged, which according to the bad odor must also come from an infection of the streptococcus coli.

"The boy developed some bed sores which should be treated with zinc salve or any other suitable salve or preparation.

"He is supposed to get, also, one treatment per week with

Sherman vaccine. . . . If you should find it necessary to enlarge the opening of the abscess, please do ` so. I am certain that within a few weeks the whole condition will be cleared up and that the boy then can be up and about."

The boy, after his return, remained in bed and was visited by Dr. Boslough about once a week thereafter, who found no occasion for doing anything as to enlarging the opening of the abscess during these visits.  About February 1st the boy complained of pain or a burning sensation in the limb. A swelling appeared and pus was discovered by Dr. Boslough in considerable quantity within the cast.  He promptly removed it, finding a large quantity of pus and several abscesses or open fistulas in the groin.  After such removal the swelling rapidly subsided.  The boy remained in bed until about January, 1926.  After that he walked with crutches and returned to school in September, 1926, and continued to go, using two crutches until the time of trial.

Another X-ray in April, 1926, showed practical destruction of the head of the right femur as a further stage in the same process that was shown in the X-ray of the preceding September.

A third X-ray in June, 1926, showed the neck of the femur resting in the cavity above, but somewhat displaced upward, and most of the neck of the femur intact.

The following special verdict was answered by the jury:

(1) Did the placing of the plaster cast . . . November 5, 1924, with directions to keep the same in position, as was done by defendant, constitute negligence on his part? A. Yes.

(2) Did such negligence proximately cause an injury to plaintiff's physical condition and health?  A. Yes.

(3) What amount of damages did plaintiff suffer by reason of said negligence?  A. $10,000.

After motions by the respective parties, those of defendant were denied and judgment for plaintiff granted upon the verdict.  Defendant appeals from the judgment.

For the appellant there was a brief by *Lines, Spooner & Quarles* of Milwaukee, and oral argument by *Charles B. Quarles*.

*George C. Stetson* and *Walter D. Corrigan, Sr.*, both of Milwaukee, for the respondent.

The following opinion was filed June 20, 1927:

ESCHWEILER, J.   The basis for claiming that defendant was negligent, proximately causing injury to plaintiff, is alleged to be because the defendant, knowing of the presence of fistulas discharging pus from the then present inflammation of the hip joint, failed to make proper openings over the fistulas; made the cast fit too tightly in view of the then condition and situation of the boy; that such improper placing of the cast caused an accumulation of pus in the region of the femur, causing or substantially assisting in causing its destruction; that defendant, knowing that fistulas will open under such a cast, exercised no proper care towards affording or directing relief that might be required in the event that new fistulas opened after the boy left the hospital.

Plaintiff's only expert medical testimony to support a finding that the defendant failed to exercise the degree of care required under the recognized standard was that of one doctor, the general character of whose practice was surgery and diseases of women, who had never specialized in orthopedic surgery, having had experience with deep infections in the tissues and with one case such as was here presented, of infection in the hip, and for about eight and one-half years was surgeon for a railroad company.

In the testimony of this witness after a hypothetical question by plaintiff's counsel, he answered that what was done by the defendant was not good practice because in this particular case there were several sinuses that were discharging pus; that condition was immobilized by placing a plaster

cast upon the tissues, over the tissues and over the mouth of the sinuses, by which the pus was retained inside the cast and inside the tissues, causing it to make further inroads upon the soft as well as hard tissues; preventing proper drainings of the pus contents of the cavity.

He also said that such pus would make further inroads upon surrounding tissue, tending to destroy the neck of the femur; that the placing of the cast over the mouth of the fistula would cause a portion of the pus to remain around the neck of the femur, and that so remaining for an appreciable period of time would cause a further necrotic condition of the soft as well as of the hard tissues. Also, that assuming all the facts in the hypothetical question to be true and upon the assumptions just above recited he attributed an increased disability of the hip joint; a destruction of tissue; and an impairment of motion to the placing of the cast in November, 1924; and further, that but for the placing of the cast the prior improvement in the limb would have continued.

Unless the testimony of this witness can be properly used to support the verdict there is no basis in the record sufficient to charge the defendant with actionable negligence.

Another physician called by plaintiff, on being asked the same hypothetical question, testified that if a cast or other dressing were so applied as to prevent drainage and cause backing up of pus, then it would not be good practice,—if the cast was so applied that drainage from the fistula was not interfered with he saw no way in which harm could come from the application of the cast.

We are forced to the conclusion that plaintiff's expert witness was improperly allowed to assume as a fact, and which was an important, if not the controlling, element in arriving at his conclusion, the statement in the hypothetical question that the defendant placed the plaster cast over two fistulas which were then open and discharging the accumulation of

pus arising on account of the prior established infection in the hip joint and that no openings were made over the mouths of such fistulas to permit drainage.

We are satisfied that the record compels the conclusion that the hypothetical question and the answer of this witness improperly assumed material and controlling facts as having been shown to exist contrary to the evidence.

The testimony is undisputed that a serious progressive necrotic condition or breaking down of the bone tissue had existed for more than a year before defendant saw the case. As appears from the X-ray photograph in September preceding the first examination, there had been a substantial destruction of the bone tissue of the hip, and defendant correctly and properly diagnosed such condition at the time of his examination and treatment and without the aid of any X-ray. All that he could then be expected to do was to assist nature in checking further inroads by the infection then existent in the boy's hip. No serious contention was or is made but that the use of a plaster cast, whereby the bones of the limb could be kept at rest, was proper and universally accepted practice. At all times from the first week after the injury in April, 1923, to the time the boy was last taken from the hospital, it was understood that such infection was actually present and in such a condition that it was coming to the surface through the flesh. The provisions made at the time of the fixing of the limb in the cast, and by the directions of the defendant to the local physician who was then to take charge of the patient, show that it was understood that such condition would continue in the future. The defendant was too optimistic in his prognosis; that, however, is not and cannot be charged against him as an element of negligence.

It is undisputed from the testimony of Dr. Boslough that when he saw the boy on his visit about the week preceding the removal of the cast in February, 1925, there was then

no indication that any unusual situation existed, or any need to comply with the suggestions made in defendant's letter as to needed action in enlarging any abscess opening.

It must be treated as a verity in this case that the pus found in large quantities from running abscesses within the covering by Dr. Boslough when he removed the cast must have been from fistulas opened on the surface long after the boy left the Milwaukee hospital and but a few days prior to the removal of the cast. The testimony of defendant and other medical witnesses on his behalf, and which stood uncontradicted, was that in a period of two to four days after the opening of any such newly-discharging fistula, such would disclose itself by the softening or staining of the porous cast and by the unpleasant sensations thereby caused to the patient. There is no identification in this case of the open fistulas found on the removal of the cast with the dormant fistulas covered on the placing of the cast in November.

There is no support in the testimony for any proper conclusion by a jury that the cast as originally placed on the limb was more tightly attached to the limb than proper practice required. It is undisputed that in order for such to be of any benefit it must be reasonably tight around the limb in the sense that it prevents the motion which it is sought to guard against, and the testimony is undisputed that if placed too tightly, that is, so that it constricts the blood vessels of that portion of the body, such situation is disclosed by a swelling of the flesh at some of the points so surrounded within a few hours after its application. The evidence negatives any such condition, and Dr. Boslough testifies that undoubtedly an abscess formed under the cast after the boy got back from the hospital.

Some stress is laid by respondent upon a statement of Dr. Boslough that at the time of the removal of the cast the odor coming from the discharge was very bad and showed

evidence of long illness; from which it is argued that some condition for which the defendant could be held responsible was of long duration, instead of the only reasonably proper construction, in view of the undisputed fact that the infected condition of the hip bone creating the pus was then of long standing.

Under the facts in this case the answer of plaintiff's medical witness ascribing wrong practice to the defendant should not have been permitted to stand or be considered by the jury, inasmuch as it was so plainly predicated upon facts required of the witness to be assumed as true, which did not exist, namely, that there had been by defendant an improper covering of open fistulas by a too tight plaster cast.   There being no competent evidence in this case upon which a finding of the jury can be sustained that the defendant in his treatment of this unfortunate boy breached the duty that he owed or the obligation he understood in rendering service as a physician, the judgment cannot stand.   *Krueger v. Chase,* 172 Wis. 163, 177 N. W. 510; *Matuschka v. Murphy,* 173 Wis. 484, 492, 180 N. W. 821; *Gerber v. Wloszczynski,* 188 Wis. 344, 350, 206 N. W. 206; *Mayer v. Hipke,* 183 Wis. 382, 395, 197 N. W. 333; *DeSham v. Taugher,* 183 Wis. 446, 198 N. W. 268; *Finke v. Hess,* 170 Wis. 149, 174 N. W. 466.

We find no support for the verdict in the cases relied upon by respondent, such as *Stenkowiczki v. Lytle,* 171 Wis. 625, 177 N. W. 849, or *Schultz v. Tasche,* 166 Wis. 561, 165 N. W. 292, and others.

The defendant's motion for judgment should have been granted.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.

A motion for a rehearing was denied, with $25 costs, on October 11, 1927.