MICHALSKI, Appellant, v. WAGNER and others, Respondents.

*December 1, 1959—January 5, 1960.*

For the appellant there was a brief by *Schroeder, Sheets & Schroeder, Clyde E. Sheets* and *Thomas G. A. Herz,* all of Milwaukee, and oral argument by *Clyde E. Sheets.*

For the respondents there was a brief by *Wickham, Borgelt, Skogstad & Powell,* attorneys, and *Edmund W. Powell* of counsel, all of Milwaukee, and oral argument by *Edmund W. Powell.*

CURRIE, J.   The brief of the appellant plaintiff raises these assignments of error as a ground for securing a new trial:

(1) The exclusion of a portion of the deposition of Dr. Young of the Mayo Clinic of certain testimony relating to the percentage of disability of the plaintiff.

(2) The exclusion of any testimony by Dr. Sanfelippo relating to subjective symptoms communicated to him by the plaintiff.

(3) The exclusion of evidence of the expenses incurred by the plaintiff at the Mayo Clinic.

### *Exclusion of Dr. Young's Testimony as to Percentage of Disability.*

The accident occurred on the evening of May 3, 1956, in the city of Milwaukee.  Following the accident the plaintiff was taken to the Milwaukee County Emergency Hospital by police ambulance for first-aid treatment, and after examination by the hospital physicians he was released and went home.  The next morning he attempted to work but after an hour he gave it up because of pains in his head and his right chest.  He then sought treatment from Dr. Jacob M. Fine, a physician.  Dr. Fine's diagnosis of the injuries was a contusion to right forehead with laceration; a contusion to the right chest; and an abrasion to the calf of the right leg with hematoma formation.  The plaintiff did not complain to Dr. Fine of any neck or back pain.  He was last seen by Dr. Fine on May 12, 1956.

The plaintiff was also treated by Dr. M. L. Sanfelippo, an osteopathic physician and surgeon, after consulting an

attorney. Such treatment extended from May 11, 1956, to April 12, 1957. Dr. Sanfelippo had X rays taken of the plaintiff's spine at the Milwaukee Hospital on May 14, 1956. The early treatment consisted principally of diathermy and traction to the neck. The diagnosis was that of a whiplash injury to the cervical region of the spine. Dr. Sanfelippo found that there was a displacement of the fifth upon the sixth cervical vertebra. He testified that in his opinion the plaintiff had sustained a permanent injury as the result of the accident which will produce future pain, and that such condition will continue throughout the plaintiff's life. Dr. Sanfelippo estimated that there was about a 15 per cent disability in the cervical region and about a 10 per cent disability in the sacral region. He referred generally to the existence of muscle spasm and restricted motion, but gave no description of the extent of either.

On the other hand, Dr. James R. Regan, defendants' medical witness, gave testimony in direct conflict with that of Dr. Sanfelippo. Dr. Regan is an orthopedic surgeon and on January 27, 1958, he made a detailed examination of the plaintiff on behalf of the defendants. Dr. Regan interpreted various X rays, including those taken at the Milwaukee Hospital and the Mayo Clinic, as well as his own. He found that there was some overhang of the fifth cervical vertebra on the sixth, and of the fourth on the fifth. In his testimony Dr. Regan stated that this was a developmental or congenital condition not caused by trauma. It was his opinion that the plaintiff sustained no permanent disability in either his neck or low back as a result of the accident.

In April, 1957, the plaintiff had gone to the Mayo Clinic where he was seen by a number of staff doctors, including Dr. H. H. Young, an orthopedic surgeon, and had received traction and physical-therapy treatment under Dr. Young's direction. Dr. Young's deposition was taken later by the plaintiff and the instant assignment of error relates to the

ruling of the trial court in excluding parts of such deposition.

Counsel for the plaintiff read into evidence Dr. Young's deposition except as to certain parts which were excluded upon objection of the attorneys for the defendants. Dr. Young testified that he saw the plaintiff on April 20, April 24, and May 3, 1957, and X rays were taken under his direction of the plaintiff's back. He stated that the plaintiff "had excellent spine motions in all directions." The extent of Dr. Young's orthopedic findings, as testified to, was that the plaintiff had narrowed lumbosacral facets, and a slight lateral curvature of the cervical spine with a slight forward subluxation of the fifth cervical vertebra upon the sixth. The following questions were then put to Dr. Young and he gave the following answers thereto:

"*Q.* Doctor, can you then state, as to whether in your opinion the collision that Mr. Michalski was in, produced, with reasonable medical certainty, the injury which you found in the cervical portion of his spine? *A.* Well, assuming the history as given to me by the patient as being correct, that he had no difficulties prior to the accident, and allowing for the fact that I am seeing the patient almost one year following the accident, the most I could possibly say is that such an accident might have caused the condition that I found present. . . .

"*Q.* Have you any opinion, doctor, as to the cause of the condition found in the lumbar sacral facets, that is the narrowing of them? *A.* Yes, something happened to them, but whether due to the injury or simple degeneration of the joint, I cannot tell in this particular instance."

Dr. Young was then asked questions relating to the extent of the plaintiff's permanent disability and it is this portion of the deposition which was excluded. The material questions and answers so excluded are as follows:

"*Q.* Now with reference to the cervical area of the spine, is there any permanency in connection with the condition that you found present in Mr. Michalski? *A.* Well, I assume that subluxation will remain.

"*Q.* And for how long a period of time, doctor? *A.* Probably always.

"*Q.* And state whether in your opinion there is any degree of disability with the subluxation which is present? *A.* Yes, I think anybody with a subluxation has a degree of disability.

"*Q.* Well, have you an opinion as to the degree of disability present in so far as Mr. Michalski is concerned? *A.* Yes. I would estimate about a 15 per cent disability.

"*Q.* And will you state of what that 15 per cent disability is? Is that the whole body? *A.* Well, I related that to the body as a whole."

It will be observed that as far as Dr. Young would venture, in stating an opinion as to whether the accident had caused the abnormality to the cervical vertebrae which he had found, was to state that it was a possibility. Nowhere did he testify that it was likely or probable. We, therefore, deem that the trial court properly excluded that portion of his testimony wherein he attempted to evaluate the extent of the plaintiff's permanent disability.

One of the leading Wisconsin cases dealing with the sufficiency of medical opinion evidence bearing on permanent disability is *Hallum v. Omro* (1904), 122 Wis. 337, 99 N. W. 1051. The conclusion therein expressed was that the form of the testimony given by the physician must be such as to express reasonable probability and not mere possibility. This clearly appears from the following statement in Mr. Justice MARSHALL's opinion in that case (p. 344):

"An examination of the cases cited will show that 'probable,' 'likely,' and 'liable' have been treated as synonymous, *each dealing with reasonable probability, not with possibil-*

*ity,* and that what may probably or is likely or liable to be the future result of a personal injury is competent evidence to prove what is reasonably certain in the matter." (Emphasis supplied.)

In *Gerber v. Wloszczynski* (1925), 188 Wis. 344, 206 N. W. 206, a Dr. Stern was asked if he had an opinion, to a reasonable certainty, whether a heart condition resulted from an infection that had been caused by the accident. He answered (p. 347), "I believe it quite possible. I believe his heart has practically reached the end of its reserve, and I do not think he has a very long life expectancy with the heart condition he has." This court commented on such testimony as follows (p. 350):

"The testimony of Dr. Stern has but little probative value, if any. In his opinion, he believed it quite possible that the mitral regurgitation and enlarged heart resulted from infection. This is not opinion evidence based upon a reasonable certainty."

This court, in the recent case of *Meyer v. Fronimades* (1957), 2 Wis. (2d) 89, 92, 86 N. W. (2d) 25, held that a doctor's testimony, based on a mere "possibility" that headaches were caused by the injury, is of no probative value.

The basis for these holdings in *Gerber v. Wloszczynski, supra,* and *Meyer v. Fronimades, supra,* is well stated in the following extract from the opinion of Mr. Justice (later Chief Justice) FRITZ in *Creamery Package Mfg. Co. v. Industrial Comm.* (1933), 211 Wis. 326, 330, 248 N. W. 140:

"Preponderance of mere possibilities is, of course, not the equivalent of a preponderance of probabilities. Mere possibilities leave the solution of an issue of fact in the field of conjecture and speculation to such an extent as to afford no basis for inferences to a reasonable certainty, and in the absence of at least such inferences there is no sufficient basis for a finding of fact."

### Exclusion of Dr. Sanfelippo's Testimony with Respect to Subjective Symptoms.

The trial court sustained defendants' objection to any testimony by Dr. Sanfelippo relating to subjective symptoms communicated to the witness by the plaintiff, and excluded such testimony. The basis of the objection was that such statements by the plaintiff to Dr. Sanfelippo were self-serving declarations made after the plaintiff had consulted an attorney. In sustaining the objection the trial court placed reliance upon the holding in *Kath v. Wisconsin Central R. Co.* (1904), 121 Wis. 503, 99 N. W. 217.

The plaintiff contends that the rule of the *Kath Case* is not applicable to the instant situation because the plaintiff's statements of subjective symptoms were obtained by Dr. Sanfelippo in order for him to properly treat the plaintiff. On the other hand, the defendants urge that the plaintiff is barred from raising such assignment of error in this court because of his failure to raise the point below in his motion after verdict.

The position of the defendants is well taken and must be sustained. We decline to pass upon the merits of such assignment of error because not raised in the motion after verdict. *Wells v. Dairyland Mut. Ins. Co.* (1957), 274 Wis. 505, 518, 80 N. W. (2d) 380, and *Kincannon v. National Indemnity Co.* (1958), 5 Wis. (2d) 231, 238, 92 N. W. (2d) 884.

### Exclusion of Evidence of the Expenses Incurred at the Mayo Clinic.

The plaintiff further contends that the expenses incurred by him while at the Mayo Clinic should have been admitted into evidence for consideration of the jury in fixing the amount of plaintiff's damages for hospital and medical expenses. The basis for the trial court's ruling that the state-

ment of the Mayo Clinic in the sum of $460 was not to be admitted or considered was because such statement covered certain services rendered that had no direct connection with the plaintiff's alleged whiplash injury to his neck and back. In so ruling, the trial court relied upon the holding of this court in *Smee v. Checker Cab Co.* (1957), 1 Wis. (2d) 202, 206, 83 N. W. (2d) 492.

On this appeal the plaintiff seeks to establish the admissibility of such $460 statement by certain excluded testimony of Dr. Sanfelippo and Dr. Young. Such testimony was placed in the record in the absence of the jury by way of offers of proof after the trial court had ruled that the same was not admissible.

The difficulty with the plaintiff's position is that his motion after verdict for a new trial does not state as a ground therefor any ruling of the trial court with respect to the expenses incurred at the Mayo Clinic, or any ruling rejecting any testimony of Dr. Sanfelippo. The motion does refer to rejection of testimony by Dr. Young but is somewhat qualified by the words, "especially that testimony showing causal relationship and extent of permanent disability, as well as pain and suffering." We, therefore, consider that at the most all that the plaintiff is entitled to have us review under the instant assignment of error is the excluded testimony of Dr. Young bearing on this $460 statement.

While the $460 statement is not in the record transmitted to this court, it appears that, in addition to the orthopedic examinations, X rays, and treatment of the plaintiff at the Mayo Clinic, it also covered an electrocardiogram; laboratory tests; X rays of the gall bladder, head, and stomach; eye, ear, nose, and throat examinations; neurology examination; psychiatric examination; excretory urogram; proctoscopic examination; and cystoscopic examination. Apparently, such statement was not sufficiently itemized so as

to segregate the items that bore no direct relationship to the plaintiff's alleged whiplash injury from those that did.

Eight other doctors on the Mayo Clinic staff saw the plaintiff besides Dr. Young. Dr. Young was merely the orthopedic surgeon who directed his attention to the plaintiff's neck and back. With respect to the psychiatric examination made of the plaintiff at the Mayo Clinic, Dr. Young testified that he did not request the same.

The gist of the excluded testimony of Dr. Young relied upon by the plaintiff to establish the admissibility of the Mayo Clinic statement is contained in the following question and answer:

"*Q.* And have you an opinion as to those services which are listed on the bill being necessary in the diagnosis of the condition of Mr. Michalski? *A.* Well, I can't testify to all of them being in conjunction with this. I would say that which is orthopedic, neurologic, X rays, physical therapy, psychiatric examinations—all related to the alleged injury. The rest of them, I would say, are done for the sake of completeness of the examination to give an over-all picture."

It is our considered judgment that the foregoing answer, coupled with the other summarized testimony of this witness bearing on the issue, was insufficient to permit the plaintiff to recover the entire $460 amount of the Mayo Clinic bill from the defendants. This is because the $460 statement covered some items that could not properly be considered to be necessary for the diagnosis and treatment of plaintiff's alleged whiplash injury to his neck and back. Such objectionable items were not segregated from those that bore a reasonable relationship to the diagnosis and treatment of plaintiff's neck and back, and this required that the $460 statement be excluded in its entirety. The burden of proof was upon the plaintiff to prove his proper medical expenses, and this he failed to do with respect to those

items of the Mayo Clinic statement which might be recoverable as damages.

We, therefore, conclude there was no prejudicial error in excluding the rejected testimony of Dr. Young with respect to the $460 statement.

*By the Court.*—Judgment affirmed.

MARTIN, C. J., took no part.