ZWEIG and another, Appellants, vs. INDUSTRIAL COMMISSION and others, Respondents.

*February 11—April 5, 1955.*

For the appellants there were briefs by *Stroud, Stebbins, Wingert & Stroud* of Madison, and oral argument by *Byron H. Stebbins.*

For the respondent Industrial Commission there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondent Clara M. Henderson there was a brief by *Godfrey & Godfrey* of Elkhorn.

FAIRCHILD, C. J. A controversy over compensation for injuries sustained by Robert Henderson in the course of his employment arises because the appellants question the jurisdiction of the Industrial Commission in acting as it did in modifying the order dated October 11, 1948. On June 17, 1952, Henderson was awarded additional compensation based on a finding of 40 per cent of permanent bodily disability.

The circuit court ruled that the commission, under circumstances to be referred to, acted within its jurisdiction in entering the order of modification; that there was evidence to sustain the finding that as a result of his injury on November 18, 1947, Robert Henderson sustained permanent disability equal to 40 per cent permanent total disability of the body. The order appealed from was based on evidence taken at the hearings and under the following stipulation between Henderson and the Travelers Insurance Company:

"It is agreed that on November 18, 1947, Edward Zweig and Robert Henderson were both subject to the Workmen's Compensation Law of Wisconsin; that on November 18, 1947, applicant sustained injury, namely, fracture of the ribs of the right thoracic cage, while performing service growing out of and incidental to his employment; that at the time of this injury applicant was sixty-one years of age and earning an average weekly wage of $55; that applicant has been paid temporary total disability benefits of $994 from November 19, 1947, to July 24, 1948.

"Whereas applicant, Robert Henderson, agrees that the above injury is not the sole cause of his recent and present alleged disability and that said applicant is familiar with the findings of Dr. T. J. Snodgrass and is aware that an under-

lying health condition may be the principal cause of his disability.

"And whereas this respondent takes the position that there is grave doubt that the original injury of November 18, 1947, is the cause of applicant's alleged continued disability.

"Whereas such dispute has arisen between the parties hereto, it is now agreed that said dispute be compromised and settled on the basis that additional temporary total disability benefits shall be paid for the period July 24, 1948, to September 1, 1948. Further that applicant and respondent agree that as further consideration in this compromise settlement applicant shall be allowed permanent partial disability benefits equal to 10 per cent of permanent total. Applicant further states that he enters into this agreement, having in mind the findings and opinion of Dr. T. J. Snodgrass, whose reports were reviewed by the applicant.

"It is understood that the above-proposed compromise settlement is subject to the approval of the Industrial Commission of Wisconsin; that the intent of the parties to this agreement is that it constitues a full and final settlement of any and all claims that may be advanced now or in the future by this applicant as concerns the injuries or resulting consequences arising out of the accident of November 18, 1947."

On November 18, 1947, Henderson, a carpenter employed by appellant's insured fell from a scaffold, breaking several ribs and injuring his back. Thereafter, and on September 20, 1948, Henderson and the insurance carrier for Zweig entered into the agreement set forth above. In this agreement the word "compromise" was used, but the commission advised the insurance carrier that since the only issue involved was one of disability, the matter should be submitted on a stipulation rather than a compromise agreement. The insurance carrier consented to treat the agreement as a stipulation rather than as a compromise. The commission then entered an award based on said agreement, and payments were made accordingly.

On October 14, 1949, the commission forwarded to Henderson a form letter stating that it was surveying its records for statistical purposes, and made inquiry as to whether Henderson was able to work at that time, what work he had done, and what difficulties, if any, he still experienced. Henderson advised the commission that he was still unable to work, and that he was consulting physicians in Madison. Thereafter Henderson supplied the commission with a report from his physician. The commission forwarded a copy of said report to the insurance carrier and asked the carrier to advise regarding its position as to further liability. There was other correspondence between the commission and Henderson, and between the commission and the insurance carrier.

On July 26, 1950, the carrier suggested that it might be advisable that a hearing be had to determine the ultimate liability. Informal conferences were held, and on May 8, 1951, the attorneys for Henderson requested that a hearing be held. Thereafter the commission sent out notices of hearing upon blanks headed as follows: "Notice of Hearing on Motion of the Industrial Commission of Wisconsin." The final hearing was held on May 2, 1952, and resulted in an award by an examiner of the commission dated May 12, 1952, directing the payment of additional compensation based on a 40 per cent permanent disability. On June 17, 1952, the commission affirmed such finding and order, and this action was started for a review in the circuit court for Dane county. The trial court affirmed the findings and order of the commission.

It is the first contention of appellant that the commission exceeded its authority in scheduling the hearings on its own motion. In spite of what we said in the case of *C. F. Trantow Co. v. Industrial Comm.* 262 Wis. 586, 55 N. W. (2d) 884, the members of this court are not in agreement as to the authority of the commission to schedule hearings on its own

motion, except where such authority is given to it by statute. Such authority is conferred under the provisions of sec. 102.12 and sec. 102.18 (4), Stats., neither of which would seem to apply to a case such as this. However, we hold that the hearings complained of were held because of the request by the claimant and also at the suggestion of the insurance carrier, and we do not pass upon the authority of the commission to schedule these hearings on its own motion. The requests for the hearings were made by applicant, and the fact that the commission's form of notice of hearing bears the notation that it is upon its own motion does not change the facts.

The appellant next contends that sec. 102.16 (1), Stats., limited the commission's right to modify the award of October 11, 1948, to one year thereafter. That contention would be sound if the agreement upon which the award was based could be held to be a compromise agreement. However, the plaintiff, in writing, agreed to eliminate the word "compromise" and to have the agreement considered as a stipulation of fact. As such it comes within the rule laid down by this court in the case of *Wisconsin Axle Division v. Industrial Comm.* 263 Wis. 529, 57 N. W. (2d) 696, 60 N. W. (2d) 383.

The legislature, in 1943, by amendment to sec. 102.16 (1), Stats., set out an effective distinction between a compromise and a stipulation under which further consideration may be given to the actual facts. Here there was no final award on a compromise. "Compromise" was eliminated by act of the parties, and the question of the extent of liability still remained undetermined. The contention that the 1943 amendment of sec. 102.16 (1) is unconstitutional, in that it attempts to give an employee the right to obtain a review of an order within six years, whereas an employer is limited to twenty days under the provisions of sec. 102.18 (3), is not sustained. That amendment reads as follows:

". . . Unless the word 'compromise' appears in a stipulation of settlement, the settlement shall not be deemed a compromise, and further claim shall not be barred except as provided in sec. 102.17 (4) irrespective of whether award is made."

Sec. 102.17 (4), Stats., referred to therein reads as follows:

"The right of an employee, his legal representative, or dependent to proceed under this section shall not extend beyond six years from the date of the injury or death or from the date that compensation (other than medical treatment or burial expenses) was last paid, or would have been last payable if no advancement were made, whichever date is latest."

This latter provision of the statutes was construed in the case of *Wacker v. Industrial Comm.* 248 Wis. 315, 21 N. W. (2d) 715, and applies only to the time within which an employee may file a claim for compensation. Under our decision in the *Wisconsin Axle Division Case, supra,* this does not deal with modifications of awards made after a hearing or awards based on agreements, but merely prevents awards based on stipulations of settlement from limiting the time allowed an injured workman for filing a claim for compensation.

The appellants therefore are not in a position to question the constitutionality of the 1943 addition to sec. 102.16 (1), Stats., because they voluntarily joined in the proceeding before the commission under that provision. They were advised by the commission that "in view of the fact that the only issue is one of disability, we believe that the matter should be submitted on a stipulation rather than on a compromise." The order now challenged (the order entered June 17, 1952) was based upon the order entered on October 11, 1948, pursuant to a stipulation entered into by the appellants. Under the rule of constitutional law, one may not " 'retain

the benefits of the act while attacking the constitutionality of one of the important conditions.' " *Fahey v. Mallonee,* 332 U. S. 245, 255, 67 Sup. Ct. 1552, 91 L. Ed. 2030. See also *Beck v. Hamann,* 263 Wis. 131, 138, 56 N. W. (2d) 837; *Schutt v. Kenosha,* 258 Wis. 83, 44 N. W. (2d) 902; *Hayes v. Hoffman,* 192 Wis. 63, 70, 211 N. W. 271; *Derong v. Industrial Comm.* 209 Wis. 88, 92, 244 N. W. 591.

There is therefore now before us only the question of the existence of credible evidence to sustain the finding that as a result of his injury on November 18, 1947, Robert Henderson sustained permanent bodily disability equal to 40 per cent of total permanent disability. This is a question of fact, and the competency of the evidence must determine it. The attorney general insists upon, and the record warrants, the conclusion that there is credible evidence to sustain the finding that as a result of his injury on November 18, 1947, Robert Henderson sustained disability equal to 40 per cent of total permanent disability of body. The question of the existence of disability sustained by Henderson as a result of this accident necessarily presented a question of fact for the commission. The commission's findings are conclusive if sustained by any credible evidence. The evidence sustaining the commission's findings may be sufficiently epitomized in the following review:

Henderson had been employed as a carpenter by a contractor. Much of the work that Henderson was called upon to do was done 30 to 40 feet off the ground. He climbed ladders and scaffolds each day, "up and down maybe à dozen times or more from the ground and up." While working in his employment previous to the accident, he never lost any time whatsoever because of illness or infirmity; nor did he ever have to stop work because of shortness of breath or dizziness; nor did he ever consult a physician for any reason. He fell from a scaffold a distance of some 14 feet, broke several ribs on his right side, and injured his back. From the time of the accident Henderson was unable to do any work.

There was evidence by physicians who examined him to the effect that he was unable to carry on his work. Dr. Thomas, who examined him on January 16, 1951, testified:

"Oh, I think his disability is total now, sir, as far as working as a carpenter is concerned."

In a report filed March 1, 1950, Dr. Gallagher answered the following questions in the following manner:

"Has accident or industrial disease resulted in any permanent disability?
"Yes.
"If so, what percentage of disability to the member or organ involved, or to the entire body if injury is to torso or head?
"Permanent partial disability with relation to the back is 40 to 50 per cent."

Dr. Foster, whose physical findings were similar to those of Dr. Thomas, testified:

"After his injury . . . he was no longer able to carry on his work even at a level which had been embarrassed."

There was other credible evidence, competent and material, sustaining the findings warranting the conclusions reached.

Appellants' contention that Dr. Gallagher's verified medical report, considered by the commission, was not properly received cannot be sustained. This report was accepted under the provisions of sec. 102.17 (1) (as), Stats., and was properly admitted in evidence. It was sent to appellants on March 9, 1950, and its receipt before the commission was acquiesced in by them. The hearing was held on May 2, 1952. The examiner began the hearing with the following statement: "The verified report of Dr. Gallagher dated March 1, 1950, is a part of the record. The only issue appears to be the extent of permanent disability; that is correct, isn't it?" The representatives of the respective parties agreed that it was. Such agreement by both parties warrants the con-

sideration of that report by the commission and constitutes a waiver of any right to object later. *Kloety v. Delles,* 45 Wis. 484, 490; *Timm v. Rahn,* 265 Wis. 280, 285, 61 N. W. (2d) 322.

Appellants cannot complain of the commission's award of 40 per cent disability, for the commission acted within its competence in entering the additional order of May 12, 1952. It properly considered the verified report of Dr. Gallagher in making new findings. Those findings, based on credible evidence, are conclusive. Under the circumstances disclosed by the record in this case there was no unwarranted or excessive allowance made to Henderson in awarding him 40 per cent total bodily disability. In *M. & M. Realty Co. v. Industrial Comm.* 267 Wis. 52, 63, 64 N. W. (2d) 413, this court said that "Numerous decisions of this court have held that an employer takes an employee 'as is' and the fact that he may be susceptible to injury by reason of a pre-existing physical condition does not relieve the last employer from being held liable for workmen's compensation benefits if the employee becomes injured due to his employment, even though the injury may not have been such as to have caused disability in a normal individual."

*By the Court.*—Judgment affirmed.