STATE, Appellant, vs. INDUSTRIAL COMMISSION and another, Respondents.*

*February 10—April 3, 1956.*

* Motion for rehearing denied, without costs, on June 5, 1956.

414

For the appellant there was a brief by the *Attorney General* and *Mortimer Levitan,* assistant attorney general, and oral argument by *Mr. Levitan.*

For the respondent Industrial Commission there was a brief by *Edwin M. Wilkie,* special counsel, joined in by *Hebert & Smith* of Tomahawk, for respondent Mrs. Leland N. Fields, and oral argument by *Mr. Wilkie* and *Mr. John E. Smith.*

CURRIE, J. The state advances the following contentions on this appeal:

(1) The commission acted without and in excess of its powers in appointing Dr. Kurtz as an independent medical examiner.

(2) Dr. Kurtz's opinion as to cause of death does not constitute credible evidence to support the commission's finding on that issue because Mr. Nelson's letter to the doctor did not set forth all of the essential facts.

(3) Dr. Kurtz's opinion as to cause of death does not constitute credible evidence because based upon speculation as brought out in the state's cross-examination of the doctor.

(4) The commission did not make such a review of the evidence as is required by statute.

In support of its first contention, the state maintains that sec. 102.17 (1) (c), Stats.,[1] did not authorize the commission to request an opinion from Dr. Kurtz as an independ-

---

[1] Sec. 102.17 (1) (c), Stats., reads: Whenever the testimony presented at any hearing indicates a dispute, or is such as to create doubt, as to the extent or cause of disability or death, the commission may direct that the injured employee be examined or autopsy be performed, or an opinion of a physician be obtained without examination or autopsy, by an impartial, competent physician designated by the commission who is not under contract with or regularly employed by a compensation insurance carrier or self-insured employer. . . . The report of such examination shall be transmitted

ent, impartial, medical examiner appointed by the commission. It is the position of the state that up to the point when such opinion was requested of Dr. Kurtz there was no "dispute" in the testimony, nor did the testimony raise any "doubt" as to liability which would warrant the appointment of an independent medical examiner. We find it unnecessary to pass on this contention inasmuch as the record clearly establishes that the state has waived any right to raise such question on this appeal. This is because the state never at any time while the proceedings were pending before the commission voiced any objection to Dr. Kurtz's report being made part of the record. An adequate opportunity was afforded the state to make such objection at the beginning of the second hearing held on December 4, 1953. At the opening of that hearing the examiner made the following statement on the record and asked the following question of both counsel for applicant and the state:

"Let the record show that previous hearing was had March 17, 1953; that order was issued July 23 which was set aside by the commission on September 16, 1953. The report of Dr. Kurtz which is dated October 11, 1953, on the basis of independent medical examination, is a part of the record. The matter is now pending before the Industrial Commission as a body for cross-examination of Dr. Kurtz and for rebuttal of his report. Is that correct, gentlemen?"

Both counsel for the state and applicant answered the examiner's question in the affirmative and the assistant attorney general proceeded at once to call Dr. Kurtz for cross-examination. It was incumbent upon counsel for the state at that time to enter a formal objection on the record to the admissibility and competency of Dr. Kurtz's report, if the state desired to raise the issue that such medical report

in writing to the commission and a copy thereof shall be furnished by the commission to each party who shall have an opportunity to rebut the same on further hearing.

was not properly part of the record to be considered by the commission in making its findings and award. Instead, the assistant attorney general proceeded with the cross-examination of Dr. Kurtz, which failed to shake the opinion expressed by him in his report. We hold that this clearly constitutes a waiver and the admissibility of such report cannot now be questioned for the first time on appeal. *Zweig v. Industrial Comm.* (1955), 269 Wis. 324, 332, 333, 69 N. W. (2d) 440.

The medical report of Dr. Kurtz was based entirely upon the statement of facts appearing in Mr. Nelson's letter to the doctor requesting such report. In such letter Mr. Nelson correctly set forth the age, height, and weight of Fields and also stated that Fields was apparently in good health and active before January 28, 1953. This letter also reported that deceased had been examined on January 23, 1953, and nothing abnormal had been found as to his heart and blood pressure. The prior nature of Fields' work for the conservation department was described as follows:

"Applicant's job was that of a conservation warden and included investigation of 'beaver complaints,' checking of hunters, picking up and setting traps, and 'blowing' beaver dams, skinning and stretching beaver, making arrests of violators, repairing equipment, conducting correspondence, and other miscellaneous duties."

The letter further set forth an accurate description of all that Fields did on the morning of January 28, 1953. The state contends that the medical report of Dr. Kurtz does not constitute credible evidence upon which the commission could base a finding of causation between the physical exertion to which Fields' employment subjected him that morning and his fatal heart attack. The basis of such contention is that the statement of facts set forth in the Nelson letter was entirely inadequate and misleading. The specific complaint leveled against such statement of facts is that there was not narrated

some of the testimony showing that Fields had been inured to hard outdoor physical exercise and work. After carefully reviewing those bits of testimony omitted from the statement of facts in the Nelson letter, which are set forth in the state's brief, we are of the opinion that they were merely cumulative in character to the facts stated in the letter. We find nothing misleading in such statement of facts and consider the same a fair synopsis of the material facts brought out in the testimony.

The second ground of the state's attack upon Dr. Kurtz's report is that the medical opinion stated in such report is mere speculation. Such opinion was based upon *"reasonable probabilities,"* thus meeting the test of definiteness laid down in that leading Wisconsin case on medical-opinion evidence, *Hallum v. Omro* (1904), 122 Wis. 337, 341, 344, 99 N. W. 1051. It is the position of the state that the doctor under cross-examination admitted that, in stating his opinion based upon reasonable probabilities, he was dealing entirely in speculation.

This same contention was advanced in the trial court and is most adequately dealt with and completely answered in the memorandum decision of the learned trial judge, the late ALVIN C. REIS. Because all actions to review awards of the commission in workmen's compensation cases must be instituted in the circuit court for Dane county, Judge REIS became a specialist in this field of law during his nineteen years as judge of such court. Of the hundreds of such cases coming before him, only a small fraction thereof were ever appealed to this court. Because of his vast experience in this branch of the law, the members of this court came to have great respect for his decisions in workmen's compensation cases. Not only were his memorandum decisions a source of enlightenment on the legal and factual issues presented, but we were often entertained by their sparkling language and sallies of brilliant wit. The following extract

from Judge REIS' memorandum decision in the instant case is not only determinative of the issue now under consideration, but is also illustrative of the pungent style that was so characteristic of his written opinions:

"The angling with that word 'speculative' is well illustrated in the transcript. Dr. Kurtz had stated his opinion that Fields' death was due to the physical strain to which he had been subjected—that this was *reasonably probable,* as a thousand doctors have testified with approval in other cases. But the state's attorney takes him through a course in linguistics:

" '*Q.* Now, just as a matter of semantics, what do you mean by "probability" and how would you distinguish "probability" from "possibility?" *A.* Probability is—implies something which is more likely. Possibility is perhaps less likely but still within the realm of possibility.

" '*Q.* Are both within the realm of speculation? *A.* Yes.

" '*Q.* So that when you say it's a "possibility" or "probability," you are speculating in either case, aren't you? *A.* Yes.'

"Such semantic gymnastics of cross-examination would ruin about every transcript of medical testimony that we have seen in nineteen years on the bench, if we are to assume, as the state does, that it annihilates Dr. Kurtz's testimony in the present case.

"The examiner sought to clear the muddy atmosphere which had been created. The following has its point:

" 'The Examiner: Now, for the purpose of our testimony here this afternoon, you (referring to witness), of course, are aware of what we mean by "certainty." If something is true to a reasonable degree of certainty, why, you are quite positive of its being true. On the other hand, if you believe something may be true to a "possibility" it's quite doubtful. Now, we have "probability" in between there somewhere. You are probably better aware of the supreme court's actual definition of that than I am, Mr. Levitan, although I don't think it's even entirely clear by the supreme court. Now, "probability," of course, is in between possibility and certainty. I think it might still be speculative because it is not certain; but it is not just a guess as is a possibility.

" 'The Witness: No. I think we would have to classify this as *a strong probability on the basis of work which has been done and statistics which I can quote you if necessary,* but I think it's much more than a possibility. I would prefer not to use the word "certainty." (Our italics.)'

"The doctor helped to explode this 'speculation' chameleon when he emphasized 'strong probability on the basis of work which has been done and statistics which I can quote you if necessary.' That sounds expert; and, we say again, *strong probability* should be strong enough."

We turn now to the last contention advanced by the state, *i. e.,* that the commission did not properly review the evidence as required by statute. The provisions of subs. (1) and (3), sec. 102.18, Stats., require that the findings and interlocutory order of the commission in the instant case be based upon a review of the evidence submitted. In *Berg v. Industrial Comm.* (1940), 236 Wis. 172, 180, 181, 294 N. W. 506, it was held that it is proper for the commission to base its award upon a typewritten memorandum, or synopsis, of the testimony prepared by the examiner before whom the testimony had been given where the shorthand notes of the reporter were not transcribed and filed until after the entering of the award. Such case further held that such procedure was not a denial of due process.

The United States supreme court had a similar problem presented in *Morgan v. United States* (1936), 298 U. S. 468, 56 Sup. Ct. 906, 80 L. Ed. 1288. The secretary of agriculture was empowered by act of congress to fix rates for stockyard services after conducting a "full hearing" in the matter. In an opinion by Mr. Chief Justice HUGHES it was held that the statutory requirement of a "full hearing" made it mandatory that "the officer who makes the determinations [in that case the secretary of agriculture] must consider and appraise the evidence which justifies them." However, it was also held that such evidence might be taken by an examiner, and that

evidence so taken "may be sifted and analyzed by competent subordinates," (298 U. S. 481).

In the instant case Examiners Taugher and Gintz prepared synopses of the testimony received at the respective hearings conducted by them upon Mrs. Fields' application. The two members of the commission who subscribed the commission's findings and interlocutory order on March 9, 1954, had read to them aloud in full these synopses, and also reviewed and considered the various exhibits. They did not have read to them the shorthand notes of the two reporters and such notes were not transcribed nor filed until sometime after the interlocutory order had been entered.

Such synopses prepared by Examiners Taugher and Gintz constitute part of the record in this case. It is urged by the state that such synopses are not *"a fair and full statement of the essential testimony"* as required by this court's opinion in *Berg v. Industrial Comm., supra.* In support of such contention the state's brief sets forth certain extracts of testimony which were not specifically covered in the examiners' synopses. This poses the question of what test should be employed in such a situation by a reviewing court in determining when it should vacate the commission's award and remand for further proceedings as authorized by sec. 102.24, Stats.

It seems to us that where, as in the instant case, the synopses of the testimony on which the commission relied in making its findings and order are attacked on the ground that certain specific testimony was not summarized in the synopses, the court should not vacate the award and remand for further proceedings, unless it is convinced that the omission was so prejudicial that it is likely the commission would have reached the opposite conclusion from that which it did if the synopses had set forth an adequate summary of the omitted testimony. Applying such test to the omitted testimony in the case at bar, we deem it highly unlikely that, if

the synopses had summarized the same, the commission would have come to any other conclusion than it did. We believe that no useful purpose would be gained by setting forth the claimed omissions and the lengthy synopses in order to demonstrate the reasonableness of our conclusion that the omissions would not have been likely to have affected the commission's determination of the crucial issue of whether Fields' fatal heart attack was caused by his employment.

*By the Court.*—Judgment affirmed.

FAIRCHILD, C. J., dissents.