Meyer, Respondent, vs. Fronimades, Appellant.[*]

*October 8—November 5, 1957.*

[*] Motion for rehearing denied, without costs, on January 7, 1958.

90

For the appellant there was a brief and oral argument by *Michael D. Preston* of Milwaukee.

For the respondent there was a brief by *Eisenberg & Kletzke,* attorneys, and *John W. Bernard* of counsel, all of Milwaukee, and oral argument by *Mr. Bernard.*

MARTIN, C. J.  A new trial must be had in the interests of justice.

It should be noted at the outset that the question submitted to the jury on compensatory damages was a "catchall;" it did not separate pain and suffering from loss of earnings, and hence it is impossible to know how the jury arrived at its answer or how the court arrived at its reduced figure.

Plaintiff testified that he sustained a cut on his forehead; that after the fight he washed off the blood, went to bed, and in the morning tied his head up and took some aspirin; that "I have awful headaches sometimes and when I lift heavy then I have pain in the head."

Dr. Samuel Weisfeld testified that the plaintiff came to him first on January 4, 1954, with the history that:

"He suffered injuries when he was struck on the head with a table leg and the patient states that after being struck, he was dazed for a few hours and had continuous headaches and dizziness since then."

The doctor testified that he examined the plaintiff's bruises, took his history, blood pressure, pulse, temperature, and made a few neurological tests, all of which were negative; he diagnosed the injury as laceration of the forehead, multiple contusions to the scalp, and a cerebral concussion. He put no stitches in the forehead, simply changed the bandage,

and prescribed analgesics. He saw the patient four times for treatment and charged him $20. After stating that he heard the plaintiff testify he still has headaches, the doctor was asked whether he had an opinion to a reasonable medical certainty as to the basis for his present headaches, and he answered:

"It is very possible to suffer headaches after trauma to the head."

He further testified as follows:

"*Q.* Doctor, how do you arrive at a conclusion of the brain concussion if these tests were negative? *A.* Because he still had headaches.

"*Q.* Then are those tests conclusive in any way? *A.* For more-severe types of concussions.

"*Q.* But your conclusion was on your,—on other grounds, is that it? You didn't rely on the tests for your conclusions? *A.* Then I relied on the history.

"*Q.* I see, and is that a usual way of arriving at a conclusion? *A.* That's right.

"*Q.* Is that customary? *A.* That's right.

"*Q.* Now, maybe you better just explain that a little, could you? *A.* Well, it's just repetitious. There are several grades of concussions, a minor, moderately severe, and a severe concussion, and we just have a history of headaches and probably some dizziness, and we call that a mild concussion.

"*Q.* And how do you explain the fact that it still continues? Is that an ordinary situation or unusual? *A.* No, I would say it is not unusual.

"*Q.* It isn't unusual? *A.* No.

"*Q.* Even with this length of time, two years later? *A.* Anything can happen in medicine, it's a possibility."

The evidence of persistent headaches consists entirely of plaintiff's subjective statements. The doctor's testimony, based on a mere "possibility" that the headaches were caused by the injury, is of no probative value. See *Hallum v. Omro* (1904), 122 Wis. 337, 341, 99 N. W. 1051; *State v. In-*

*dustrial Comm.* (1956), 272 Wis. 409, 419, 76 N. W. (2d) 362.

In our opinion justice has not been accomplished and under the authority of sec. 251.09, Stats., a new trial is ordered. As to plaintiff's loss of earnings, his testimony is vague and indefinite, but it is unnecessary to comment further because a new trial must be had. We suggest that on the new trial the items comprising compensatory damages be separated. On the evidence in this record it appears to us that all the damages are excessive. In reducing compensatory damages to $1,000, the trial court set an amount which in our opinion is higher than the least amount a jury properly instructed would give. This is also true of the award of punitory damages. The passion and prejudice which affected the award of compensatory damages by the jury also affected the award of punitory damages.

There is in the record an affidavit by defendant's attorney showing that he served a copy of the transcript upon the plaintiff. Plaintiff proposed no amendments thereto. Plaintiff's brief is based on the proposition that the case was to be argued in this court without a bill of exceptions. There is a stipulation entered into by attorneys for both parties to extend indefinitely the time to settle the bill of exceptions. This stipulation was dated May 6, 1957. Upon that stipulation the trial court on September 6th extended the time to October 1, 1957. Warning notices from this court were mailed to both counsel on August 1st. The call was mailed to them on September 1st. The case was set for argument on October 7th and the bill of exceptions arrived at this court on October 14th. We suggest that counsel familiarize themselves with the rules of procedure and practice in the supreme court. We will feel free in the future to ignore a bill of exceptions not on file in this court at time of argument.

We may say, also, that it places a completely unwarranted burden on this court to decide an appeal presented on a brief

where record references are erroneous, no appendix refer-
ences are given, and the appendix is a mutilation, among
other things, of the transcript of testimony and lower court's
decision. Nor is the burden lessened by the inclusion in the
record of counsel's arguments to the jury where no exception
has been taken thereto.

*By the Court.*—Judgment reversed, and cause remanded
for a new trial. Each party to pay his own costs; appellant
to pay the clerk's fees.