WRIGHT, Appellant, v. INDUSTRIAL COMMISSION and others, Respondents.

*May 6—June 7, 1960.*

654

For the appellant there were briefs by *Gannon & Gannon* of Rice Lake, and *Doar & Knowles* of New Richmond, and oral argument by *John Doar*.

For the respondent Industrial Commission the cause was argued by *Mortimer Levitan,* assistant attorney general, with whom on the brief was *John W. Reynolds,* attorney general.

CURRIE, J.   This appeal presents the following issues:

(1) Is it a denial of due process for part of the testimony to be heard by one hearing examiner, and the other part of the testimony to be heard by a different examiner, but both examiners together consider the whole evidence and join in making the findings of fact?

(2) Did the circuit court abuse its discretion in denying the applicant employee's motion to subpoena members of the commission, the two hearing examiners, and other employees of the commission, in an attempt to establish that the commission's decision was not based on a proper evaluation of the evidence?

(3) Is there credible evidence to support the commission's finding that the applicant's brain condition "was not the result of any injury suffered by the applicant in the course of his employment for the respondent [employer]?"

## Due Process.

This court has previously held on at least two occasions that there is nothing illegal in the procedure here followed of having the testimony heard by two or more examiners, each hearing only a portion of the total testimony, but all joining in the final findings of fact. *Fitz v. Industrial Comm.,* ante, p. 202, 102 N. W. (2d) 93, and *State ex rel. Madison Airport Co. v. Wrabetz* (1939), 231 Wis. 147, 157, 285 N. W. 504. It is implicit in such holdings that there is nothing in the Wisconsin Workmen's Compensation Act or the rules of the Industrial Commission which prohibits such practice. Any ambiguity in either such act or the rules on this point has been resolved against the contentions of the appellant employee by long years of practical interpretation on the part of the commission to which this court defers. *Frankenthal v. Wisconsin R. E. Brokers' Board* (1958), 3 Wis. (2d) 249, 255, 88 N. W. (2d) 352, 89 N. W. (2d) 825, and *State ex rel. West Allis v. Dieringer* (1957), 275 Wis. 208, 218, 81 N. W. (2d) 533.

Counsel for Wright contend that such procedure does constitute a denial of due process where the credibility of witnesses is material to the outcome, as was the case here. In support of such contention there are cited the cases of *S. Buchsbaum & Co. v. Federal Trade Comm.* (7th Cir. 1946), 153 Fed. (2d) 85, and *Crow v. Industrial Comm.* (1943), 104 Utah 333, 140 Pac. (2d) 321, 148 A. L. R. 316.

In the first of such two cited cases the petitioner sought review of a cease-and-desist order of the federal trade commission. A trial examiner had conducted hearings in the matter on four different days, at which 619 transcript pages of testimony had been taken, and then died before completing such hearings. The federal trade commission then appointed a second trial examiner to complete the taking of testimony

and the petitioner made timely objection thereto. The court held that there had been a denial of due process and cited the opinion of Mr. Chief Justice HUGHES in *Morgan v. United States* (1938), 304 U. S. 1, 58 Sup. Ct. 773, 82 L. Ed. 1129.[1] The rationale of the decision is that there is a constitutional right to the benefit of demeanor evidence which is lost if an administrative agency decides the controversy without the benefit of participation of the hearing officer who heard such testimony.

In *Crow v. Industrial Comm., supra,* the hearing upon an application for workmen's compensation had been held before one of the members of the Utah Industrial Commission on June 19, 1941, and he ceased to be a member of the commission on June 30, 1941. Thereafter, the commission rendered its decision without such former member, who was the only commissioner that had heard the testimony, participating in the making of such decision. The majority opinion of the Utah supreme court held that this was a denial of due process. However, Mr. Justice WADE, who wrote the opinion for the court, declared (104 Utah 337, 140 Pac. (2d) 322) :

"Where there is a conflict in the testimony, and the weight and credibility to be given testimony of the various witnesses is the determining factor, in order to accord a 'full hearing' to which all litigants are entitled, the person who conducts the hearing, hears the testimony, and sees the witnesses while testifying, whether a member of the board, or an examiner or referee, must either participate in the decision, or where,

---

[1] This is the so-called *"Second Morgan Case,"* the *First Morgan Case* being *Morgan v. United States* (1936), 298 U. S. 468, 56 Sup. Ct. 906, 80 L. Ed. 1288. For an analysis and discussion of the two *Morgan Cases,* see 2 Davis, Administrative Law Treatise, p. 44 *et seq.,* sec. 11.03, and Pearlman, "Effect of the Morgan Decisions on the Position of the Trial Examiner," 10 George Washington Law Review (1941), pp. 43–62. The first and second *Morgan Cases* were cited by this court in *State ex rel. Madison Airport Co. v. Wrabetz, supra,* and the *First Morgan Case* was also cited in *State v. Industrial Comm.* (1956), 272 Wis. 409, 421, 76 N. W. (2d) 362.

at the time the decision is rendered, he has severed his connections with the board, commission or fact-finding body, the record must show affirmatively *that the one who finds the facts had access to the benefit of his findings, conclusions, and impressions of such testimony, by either written or oral reports thereof.* This does not necessarily require that all of the commissioners must be present at the hearing, or even that the one hearing the evidence must concur in the result, *but his opinion on the testimony must be available to the commission in making its decision."* (Emphasis supplied.)

We deem that the italicized portions of the foregoing quotation supply the principle that should control our resolving of the issue before us. Where different hearing examiners hear parts of the testimony, and all join in the initial findings, the commission does have the benefit of the *"findings, conclusions, and impressions"* of each hearing examiner who heard any part of the testimony. Therefore, there is no denial of due process.

In passing, it should be pointed out that a due-process issue grounded upon nonparticipation of a hearing officer only arises in a situation where credibility of witnesses is a substantial element. 2 Davis, Administrative Law Treatise, p. 113, sec. 11.18, and *Solar Electric Co. v. Public Service Comm.* (1926), 88 Pa. Super. 495, 498.

### *Denial of Motion to Subpoena Commissioners and Others.*

We have no hesitancy in determining that there was no abuse of discretion on the part of the circuit court in denying the motion made in behalf of Wright to subpoena the members of the commission, the two examiners who participated in the proceedings, and other employees of the commission.

Wright's petition to the commission for review of the examiners' findings and order was received by the commission on April 22, 1958. The commission's order which

affirmed the examiners' findings and order is dated April 25, 1958. The brief in behalf of Wright asserts that there is a letter in the record, not printed in the appendix, which indicates that the two commissioners who signed such order of April 25, 1958, actually considered and decided the matter on April 24, 1958, but we are unable to read such inference into this letter. However, for the sake of argument, we will assume that counsel for Wright did make a sufficient showing before the circuit court that the members of the commission did devote only one day's time to the study of the record and the deciding of the petition for review.

It is contended that because the transcript of testimony consists of 301 pages and there are voluminous exhibits, mostly of hospital records, it was impossible for the two members of the commission, who participated in the making of the decision, in the limited time available to have properly reviewed and considered the record in making such decision. It is apparent that the motion to subpoena the commissioners, examiners, and other employees, was grounded on mere suspicion that this was so. Furthermore, the argument of appellant's counsel mistakenly assumes that it is the duty of the members of the commission, in passing on a petition for review such as the instant one, to read all of the testimony. To do this in every workmen's compensation case would impose too onerous a burden upon the commission members in view of the many other duties that the legislature has delegated to them. We have previously held that it is sufficient for them to read a synopsis of the testimony prepared by the examiner who heard the testimony. *State v. Industrial Comm.* (1956), 272 Wis. 409, 421, 422, 76 N. W. (2d) 362.

Those who exercise the quasi-judicial powers intrusted to administrative agencies ordinarily should not be harassed by judicial inquiry directed toward ascertaining how they

performed their adjudicative function in a particular case.[2] The presumption of regularity that attaches to the decisions of administrative agencies should protect against such harassment based upon mere suspicion. However, on a proper showing of illegal procedure, the circuit court does possess the power to subpoena Industrial Commission personnel in a workmen's compensation review proceeding. *State ex rel. Madison Airport Co. v. Wrabetz, supra,* at page 155. See also *Kaegi v. Industrial Comm.* (1939), 232 Wis. 16, 285 N. W. 845. No such showing was made by the appellant in the instant appeal.

### Credible Evidence to Support Finding.

The last point to be considered is whether there is any credible evidence to support the finding of the examiners, which was affirmed by the commission, that Wright's brain condition "was not the result of any injury suffered by the applicant in the course of his employment for the respondent [employer]."

The learned circuit judge in his memorandum opinion listed seven separate reasons why the commission could well have determined that Wright's story about the broken crane-bucket cable whipping across his head and producing the injury was incredible. We do not believe any useful purpose would be served by again reviewing and analyzing Wright's testimony. Suffice it to say we concur in the opinion of the circuit judge that there were ample reasons for the examiners doubting Wright's credibility and according no weight to his testimony.

---

[2] For a discussion of this problem see Feller, "Prospectus for the Further Study of Federal Administrative Law," 47 Yale Law Journal (1938), 647, 663, and note in 36 Columbia Law Review (1936), 1156, 1157.

Apart from the issue of Wright's credibility, there is a further reason why this finding must be sustained. This is because there is no competent medical testimony that would support a finding that the subdural hematoma was caused by the alleged whipping of the bucket cable across the top of his head. The two medical experts who testified in Wright's behalf went no further than to voice the opinion that such incident *"could have"* produced such brain condition. This expresses a mere possibility which is insufficient to sustain a finding that such incident did actually cause the subdural hematoma. Cf. *Michalski v. Wagner* (1960), 9 Wis. (2d) 22, 28, 100 N. W. (2d) 354. Furthermore, the examiners had the right to rely upon the opinion expressed by the medical expert of the respondents that such incident was not a competent producing cause for the hematoma.

*By the Court.*—Judgment and order affirmed.