ROGERS, Respondent, v. ADAMS and others, Appellants.

*January 11—February 5, 1963.*

142

For the appellants there was a brief by *Byrne, Bubolz & Spanagel* of Appleton, and oral argument by *Edward J. Byrne*.

For the respondent there was a brief by *Robert R. Gavic* and *C. L. Gaylord,* both of Spring Valley, and oral argument by *Mr. Gavic*.

CURRIE, J.    Appellants attack the jury's answer of $21,250 to subdivision (c) as being excessive and not supported by the evidence. They also contend that the trial court erred in refusing to give a requested instruction that there was no evidence of future disability or future pain and suffering.

At the time of the accident Rogers was forty-five years of age and employed as a welder by the Chicago & North Western Railway Company at its shops at Clinton, Iowa. He resided on an 80-acre farm which he owned in St. Croix county. Rogers formerly worked in the railroad company's shops at Hudson, but when those shops were closed, he was transferred to the Clinton shops. At the time of the accident, Rogers and some fellow workmen were returning to their homes after work on a Friday afternoon.

As a result of the collision, Rogers, who was riding in the rear seat, was thrown over the front seat, and then flew back. He got out of the car and walked around, but at the time felt no pain. A short time later, when entering another car to be taken to the hospital at Lancaster to be checked, he noticed pain in his right side. This pain got worse and a man had to help him out of the car and into the hospital. When he tried to cough he got a "terrific" pain in his side and could not cough. He was examined by Dr. Becher, a practicing physician at Lancaster, who found that Rogers had a marked pallor and was perspiring profusely. Rogers complained of

pain about his right lower ribs. The doctor diagnosed his injury as a contusion of the liver. X rays were taken which disclosed no fractures. The prescribed treatment was bed rest with ice packs placed about the area of contusion. Rogers was considerably improved the following morning, and he was discharged from the hospital Sunday morning. That afternoon a neighbor accompanied by Rogers' wife called for him and drove him home to St. Croix county. He has been up and around ever since.

The ride caused him pain in the right back and side. The next morning he consulted Dr. Grassl of the River Falls Clinic. Dr. Grassl found that Rogers walked with difficulty and carried himself rigidly favoring his right side. The doctor found the liver "very tender" and a marked tenderness over the right upper part of the abdomen. He noted considerable muscle spasm of the lumbar back. Dr. Grassl's diagnosis was a contusion to the liver and right kidney. He prescribed medicine to relieve the spasm and advised rest. Some days later when Rogers again consulted Dr. Grassl, he felt somewhat improved but complained of pain in upper part of chest. The ribs were X-rayed but the report thereon was negative. Dr. Grassl set up a course of diathermy treatments, prescribed another medication to relieve the spasm, and told Rogers to continue to take it easy.

Dr. Grassl became dissatisfied with the progress Rogers was making, and noted that he was complaining of pain higher up in his back than that previously complained of. Thus on July 30, 1959, Dr. Grassl sent Rogers to the Hudson hospital to have X rays taken of his spine from the neck down to the pelvis. These X rays disclosed an osteoarthritis (degenerative arthritis) condition of the dorsal and lumbar spine which was rather severe considering Rogers' age. Dr. Grassl further testified that he felt there was a fracture of the transverse process of the right lumbar 3 vertebra, basing this conclusion upon his examination of the X rays. Such a

fracture of the transverse process is significant only as an indication of the force brought to bear on Rogers as a result of the accident. On September 2d, Dr. Grassl sent Rogers to an orthopedist in St. Paul for examination but this orthopedist was not called as a witness and his deposition was not taken. On September 19th, Dr. Grassl cleared Rogers for work, having fitted him with a lumbar sacral belt to wear. Rogers then returned to Clinton, Iowa, and worked one week at his old job as a welder. He experienced difficulty in performing this work because of pain in his back. He could bend and stoop but only with difficulty. At the end of the week the railroad company laid off a group of employees, including Rogers, because of lack of work. Upon returning home he again saw Dr. Grassl who gave him more heat treatments and some pills to take. In September, 1960, Rogers was recalled for work by the railroad company. When he reported for work at Clinton, the company sent him to Dr. O'Donnell, a Clinton physician, for a physical examination. Upon the basis of this examination the company refused to permit Rogers to return to work. Dr. O'Donnell's deposition was read in evidence. In this deposition he stated that Rogers was disqualified for work on the basis of discomfort and pain from osteoarthritis of the spine.

This action was tried in late January, 1962, more than two and a half years after the accident. Rogers testified at one point that he had not attempted to get other work because of, "My back—I just can't stand it." Nevertheless, he also testified that he tried unsuccessfully to find light work around River Falls. Rogers did contact the state rehabilitation center at Eau Claire in an attempt to get light work but failed to obtain any. He never registered at the local employment office. Before the accident he tilled about 10 of his 80 acres but discontinued this after the accident. He pastured cattle owned by others on his land both before and after the accident. He does some light work in connection

with this pasturing such as turning on the windmill to water the cattle and driving staples in fence posts to repair fences. The railroad company has given him an extended leave of absence. Rogers testified that the pain in his back interferes with his sleeping, that he uses an electric heating pad on his back nearly every night, and that he takes aspirin every day for pain. Prior to the accident, Rogers had had no trouble with his back although his job with the railroad had required heavy lifting.

Before an award can be made for future pain, suffering, and disability there must be competent medical testimony to support the same. *Diemel v. Weirich* (1953), 264 Wis. 265, 268, 269, 58 N. W. (2d) 651. Dr. Grassl gave the sole medical testimony with respect to future pain and suffering and future disability. He testified, "I feel here is a man that has had rather marked osteoarthritis for his age; that the accident aggravated it. I feel that it has accelerated the process and probably will in the future over what you would expect if the patient had not been in an accident." The use of the phrase "I feel" by an expert medical witness has been held sufficient to make statements following use of such phrase an expression of the witness' professional opinion. *Unruh v. Industrial Comm.* (1959), 8 Wis. (2d) 394, 401, 402, 99 N. W. (2d) 182.

Dr. Grassl was also asked these questions and gave these answers thereto:

"*Q.* Now, based upon the history that you have taken from time to time of Willis Rogers, and also based on your examination and findings, do you have an opinion that you can state to a reasonable degree of medical certainty as to whether or not Willis Rogers at the present time is able to do physical manual labor? Do you have an opinion, Doctor? *A.* I do have an opinion.

"*Q.* And that opinion is what? *A.* I would have to advise on the basis of the findings that I would recommend that Mr. Rogers would not do heavy manual labor."

The reasonable inference to be drawn from the answer, "I would recommend that Mr. Rogers would not do heavy manual labor," is that his back condition would not permit it as of the date of trial more than two and a half years after the accident. It is unfortunate that Dr. Grassl was not asked the further question of whether or not in his opinion this condition was permanent. Nevertheless, as noted above, he did testify that the acceleration of the osteoarthritis process in Rogers' back would probably continue in the future. Therefore, if the accident accelerated and aggravated the osteoarthritis condition so as to prevent Rogers from doing heavy manual work even by the time of trial, and the continuance of such acceleration of this degenerative process is probable in the future, it would be reasonable for the jury to draw the conclusion that Rogers' injuries resulting from the accident will probably prevent his doing heavy work in the future. A medical opinion expressed in terms of reasonable probability, as distinguished from mere possibility, is sufficient. *Hallum v. Omro* (1904), 122 Wis. 337, 342–344, 99 N. W. 1051; *State v. Industrial Comm.* (1956), 272 Wis. 409, 419, 76 N. W. (2d) 362; and *Michalski v. Wagner* (1960), 9 Wis. (2d) 22, 27, 100 N. W. (2d) 354.

We conclude that the jury was presented with a minimum of evidence sufficient to permit it, in making an award for Rogers' personal injuries, to include the element of future disability to do heavy work such as he did prior to the accident. This minimum of evidence would also permit an award for future pain and suffering. Therefore, the trial court properly refused to give the requested instruction that there was no evidence of future disability or future pain and suffering. Since the jury was justified in making an award for probable future disability and probable future pain and suffering, the award of $21,250 in subdivision (c) of the verdict is not excessive on the basis of the record before us.

The wording of subdivision (c), considered alone, was such as to warrant the jury's awarding damages for future disability and future pain and suffering. Appellants contend, however, that the wording of subdivision (b) of the damage question, together with the trial court's instructions, precluded the jury from including the element of future disability in answering subdivision (c). If appellants are correct in this contention, we concede that $21,250 would be an excessive amount to award plaintiff for past and future pain and suffering alone. In such event, it would be proper for this court to fix a reasonable sum for such damages and grant Rogers the option of remitting the excess or of having a new trial confined to the issue of damages. Cf. *Powers v. Allstate Ins. Co.* (1960), 10 Wis. (2d) 78, 102 N. W. (2d) 393. The jury, in finding under subdivision (b) that Rogers' wage loss was $1,331.20, only awarded the exact amount of wages he lost between the date of the accident and the date about three months later when the railroad company recalled him to work. Appellants contend that this finding of wage loss ruled out any allowance for future wage loss and, consequently, any damages for future disability.

Subdivision (b) of the damage question required the jury to determine such sum of money as would fairly compensate Rogers "for loss of wages." The pertinent portion of the charge to the jury which relates to this subdivision was as follows:

"In connection with subdivision (b) which inquires as to loss of wages, you are instructed that you should allow the plaintiff as damages for his loss of earnings such sum as he *was* reasonably capable of earning at his usual trade or occupation during such period as he *was* unable to perform his usual work or carry on his usual occupation as a natural consequence of the personal injuries received at the time in question, and not attributable to other causes." (Italics supplied.)

The use of the word "was" in the above instruction clearly implies reference to a wage loss which had occurred before trial and not one which might possibly occur in the future. The jury may well have concluded that the only wage loss before trial which had been proved in dollars and cents was the sum of $1,331.20. Although Rogers was capable of performing light work after September, 1959, no proof was offered as to the difference in pay between such light work and the heavier work he had performed prior to the accident as a car welder. Thus the jury may well have thought that damages for impaired earning capacity due to the accident could be included in the answer to subdivision (c) of the damage question.

Among the instructions given by the trial court with respect to subdivision (c) were these:

"Subdivision (c) inquires as to compensation for his injuries. In your determination of your answer to this question, you cannot award any damages for any pre-existing disease or condition, except insofar as you are satisfied that such disease or condition has been aggravated by the injuries received as a natural result of the collision in question. If you find that the plaintiff had a pre-existing disease or condition before the collision in question, but that such disease or condition was aggravated as a natural result of the injuries received in the collision in question, then you should include an amount which will fairly and reasonably compensate the plaintiff for such damages as he suffered as a result of such aggravation of his condition.

"In answering subdivision (c) you should name such sum of money as you are satisfied to a reasonable certainty by the greater weight of the credible evidence will, in your honest and deliberate judgment, fairly and reasonably measure the total or entire amount of such true and just damages as were sustained by Willis H. Rogers for any discomfort, pain, and suffering which are the natural consequences or results of the injuries sustained at the time in question, excluding all physical conditions or infirmities attributable to other causes.

It is for you, ladies and gentlemen, to determine the amount that should be inserted as damages for injuries."

Although pain and suffering alone are stressed in the second-quoted paragraph above, the first paragraph above would fully warrant the jury's considering the element of future disability in determining its award under subdivision (c).

It was the trial court's understanding, as shown by the following statement from its memorandum decision, that the $21,250 awarded by the jury in answering subdivision (c) included future disability as well as future pain and suffering:

"The court is of the opinion that there is credible testimony which the jury could use and consider on the question of future pain and disability and that such testimony is not so indefinite or speculative that it would not support the jury's finding."

Since $21,250 is not an excessive award for Rogers' injuries because the element of future disability could reasonably be included therein, the judgment must be affirmed.

*By the Court.*—Judgment affirmed.