LOTHER, Respondent, v. KELLER and others, Appellants.

*February 28—April 12, 1966.*

404

For the appellants there was a brief by *Doar & Knowles* of New Richmond, and oral argument by *W. T. Doar, Jr.*

For the respondent there was a brief and oral argument by *Robert R. Gavic* of Spring Valley.

CURRIE, C. J.   The sole issue on this appeal is whether the jury's award of $14,000 damages for plaintiff Lother's injuries was excessive.

At the time of accident Lother was thirty-seven years of age and a part-time farmer and laborer. He lived on his 147-acre dairy farm in Pierce county and worked, when work was available, at a factory in nearby Red Wing, Minnesota.

Lother received a terrific jolt in the accident, but sustained no broken bones. He was stunned and felt no pain immediately. Shortly after the accident, however, he experienced pain in his left shoulder and back. This pain has been continually with Lother since the date of the accident. Dr. Klaas, a local physician, checked Lother and his family the night of the accident, but noticed nothing other than bruises and Lother's complaining of some chest distress.

Four days after the accident Lother was examined by Dr. Jures, an orthopedic surgeon in Red Wing. At that time he complained of pain in the neck and upper spine and tenderness in the shoulder blade. Dr. Jures examined Lother on four other occasions, the last examination being in July of 1960. The symptoms remained the same.

Lother did not consult a physician again until February of 1961 when he was examined at the Mayo Clinic. A Dr. Ivens on the staff of the clinic testified that he examined Lother in October of 1961 and at that time Lother still complained of aches and pains in his neck and shoulder. No treatment was prescribed.

Lother returned to Dr. Jures for examinations in the fall of 1961 and February of 1962, and at that time Dr. Jures felt Lother had sustained an injury to muscles in the area of the left shoulder blade.

Lother did not consult a physician again until November of 1962. At that time he was examined by a Dr. Jonas, Lother's family physician in Ellsworth, Wiscon-

sin. Lother still complained of pain in the left shoulder area. Dr. Jonas continued to see Lother during 1963, but in September of 1963 referred him to Dr. J. L. Story, a neurosurgeon at the University of Minnesota. The referral was made because Dr. Jonas thought Lother might have a herniated disc. Dr. Jonas continued to see Lother in late 1963 and 1964, and it was during that period that he noted Lother's fourth and fifth fingers on his left hand appeared white and cold. It was the doctor's opinion that this condition was caused by an injury to the nerves running from the spine to the fingers.

Lother also complained to Dr. Jonas of a pain in the left lower back and left leg. Because Lother had concededly injured his lower back earlier in 1957, there was some dispute at the trial whether the lower back and leg injury resulted from the accident in question. However, Lother testified that the trouble with his back experienced in 1957 was on his right side and the present injury was on his left side. On adverse examination in May of 1963 Lother testified that the injury sustained in the accident was in the upper back only. At the trial he clarified this apparent inconsistency by explaining that the lower back injury did not manifest itself until two or three years after the accident. This explanation was somewhat borne out by Dr. Story's testimony that when Lother first arrived at the University in 1963 he did not complain of lower back pains, but in February of 1964 he was hospitalized specifically for low back pains.

On cross-examination Dr. Jonas confined his opinion to the upper back and refused to express an opinion that the lower back pain was a result of the accident. Dr. Jures testified that although he saw Lother intermittently until February of 1962, Lother had never complained to him concerning low back pains. There was no medical opinion that this lower back pain resulted from the accident. On the contrary all of the physicians who testified expressed their opinion that Lother's upper

back injury did result from the accident. No contention is advanced by Lother on this appeal that the lower back pain resulted from the May 13, 1960, accident.

In January of 1965 Dr. Story performed an exploratory operation in the area of the spinal canal in the low neck region. He was primarily looking for a ruptured disc. The operation also included a foramenotomy, which is an unroofing of the canal through which the nerve passes from the spinal cord. This was done in an attempt to relieve any possible pressure on the nerve which might be causing Lother's complications. The surgery improved Lother's condition, but at the time of trial he still complained of pains in the upper back and in his left fingers. These pains were especially aggravated if he engaged in manual labor.

From the time of the accident until trial Lother's work record was spotty. Mr. Royce Ives, factory manager at Durkee Atwood, testified that Lother performed light and limited work satisfactorily after the accident. Lother was laid off because of lack of work from May of 1960 until the company rehired him in September of 1960. In 1961 Lother worked from January 23d until March 7th at which time he was laid off. In 1962 Lother worked all but 36 working days, and in 1963 all but six working days. Lother was granted medical leave for all of 1964 and when he failed to return to work in 1965 his association with the company was terminated. Lother testified that although he had applied at the Eau Claire and Red Wing employment offices he was unemployed at the time of the trial. He stated that he was hampered in looking for work because he possessed only a grade-school education. Dr. Story testified that before the trial Lother had told him that he had been working part time in an auto-finishing shop.

Lother found the back injury also prevented him from doing a portion of his farmwork. He had to hire other laborers to do the heavy work. The $527.25 item of damages awarded by the jury was for wages Lother had paid

to hired help necessitated because of his injury. Lother testified that he had sold his dairy cows because he was unable to care for them.

In respect to whether the injury to Lother's upper back caused any permanent disability, the following testimony is enlightening. Dr. Story testified:

"I think he has a reasonably good chance of doing rather well. I do think that he will probably have some difficulty like carrying on laboring or heavy type of activity. I would advise him that he should do a lighter type of work."

Dr. Jonas testified:

". . . I would say prognostically, or in the future, that I think he should do quite well with the exception that I think he will probably most likely have some difficulty if he does any real severe or heavy lifting, or any real severe strenuous exercise of the upper trunk and neck.

"Q. And would this difficulty that he would have of doing heavy lifting or that type of work be something that would continue in the future? A. Yes, I would expect it to."

Dr. Jures substantially agreed and testified that in his opinion Lother "had some little permanent partial disability." Lother's testimony was in accord with the testimony of the physicians.

Defendants presented only one medical witness, a Dr. Thompson, from St. Paul, Minnesota. Dr. Thompson is an orthopedic surgeon who examined Lother in October of 1964. The doctor testified that in his opinion there was no permanent disability whatever. Also Dr. Ivens from the Mayo Clinic testified that after his examination of Lother in October of 1961 he felt "any injury he [Lother] might have suffered in the accident was largely healed and resolved, and that there was nothing of serious import discovered at the time of my examination."

Although there is conflict as to whether Lother's injury resulted in permanent disability, the jury doubtless concluded that the testimony of Lother's three

physicians who spent a great deal of time with him outweighed that of Drs. Thompson and Ivens whose examinations were quite brief.

In view of the above set forth history of Lother's injury since the accident and the prognosis by his medical witnesses of permanent partial disability in the future we conclude that the award of $14,000 for personal injuries, while high, is not excessive.

The jury could well find that this permanent partial disability prevents this thirty-seven year old man from doing heavy manual labor. Assuming a retirement age of sixty-five there is an impairment of earning capacity which is likely to extend over a period of approximately twenty-eight years.

Furthermore, we must accord weight to the fact that this award of damages has received the approval of the trial court.[1]

Both defendants and plaintiff Lother cite other cases decided by this court in the field of damages to buttress their respective positions on this appeal. However, as noted in *Moritz v. Allied American Mut. Fire Ins. Co.* ". . . a comparison with other verdicts at best can only be an imperfect analogy affording some guidelines to the solution but not necessarily determining the result."[2] We consider that no useful purpose would be served in reviewing these cited cases.

The one precedent which we deem may have some significance is *Rogers v. Adams*.[3] Rogers was injured in an automobile accident and complained of a "terrific" pain about his right lower ribs. No fractures were found and he was released from the hospital on the morning following the accident. Rogers continued to experience back pain and X rays disclosed a severe degenerative

---

[1] *Springen v. Ager Plumbing & Heating, Inc.* (1963), 19 Wis. (2d) 487, 492, 120 N. W. (2d) 692.

[2] (1965), 27 Wis. (2d) 13, 23, 133 N. W. (2d) 235; *Springen v. Ager Plumbing & Heating, Inc., supra,* footnote 1, at page 493.

[3] (1963), 19 Wis. (2d) 141, 119 N. W. (2d) 349.

arthritic condition aggravated by the accident. Rogers was unable to return to work as a welder because of the extreme back pains. He was unsuccessful in his attempts to find lighter work. He was able, however, to continue light work on his 80-acre farm. In the *Rogers Case* only one physician testified, and it was his recommendation that Rogers "not do heavy manual labor." The court concluded that Rogers' condition was permanent and affirmed the judgment saying, "Since the jury was justified in making an award for probable future disability and probable future pain and suffering, the award of $21,250 . . . is not excessive . . . ." [4]

*By the Court.*—Judgment affirmed.